## In re THEODORE SHOTWELL et al.

Argued Jan. 29, 1892. Decided March 23, 1892.

**Finding Sustained by the Evidence.**—On an examination of the evidence produced upon a hearing of objections made by creditors to the auditing and allowance of the final account of the assignee of an insolvent firm, it is *held* that the finding of the court below, that certain personal property belonging to the insolvent estate, and sold at auction by the assignee, was not, in truth or in fact, purchased by him, or by the firm of which he was a member, and that neither had an interest in such purchase, was sustained by such evidence.

**A Trustee, after His Trust has Ended, may Buy the Trust Property.**—A trustee is only prohibited from dealing with the trust property for his own benefit while the trust continues. When his duty towards the property ceases, he occupies the same relation to it as does a stranger to the trust, and, acting throughout in good faith, may become the owner of the property, by purchase or otherwise.

**Trustee — When not Chargeable with Interest.**— Trustees are not required to pay interest to the trust estate, solely because the funds have been deposited with their own, nor even where use has been made of them in the business of the trustee, unless there be superadded some breach of the trust. An assignee in insolvency is not required to invest the trust funds so that they may earn interest or return a profit.

**Compromise of Claim for Rent, (Modified on Rehearing.)** —A claim for a very large amount was presented against the estate. There was some question as to whether any part of it was a proper claim for allowance, but, acting in good faith on the advice of his counsel, and on the the petition of several of the larger creditors of the insolvent, the assignee, (only one of these opposing) accepted a proposition for a settlement, compromising for less than one fifth of the claim as filed. *Held,* that the amount paid in such settlement and compromise was a proper claim against the trust estate.

**Assignee's Fees—Extraordinary Cases.**—By reason of the provisions of Laws 1889, ch. 30, § 8, the compensation of an assignee in insolvency must not exceed the statutory percentage, except in extraordinary cases, involving unusual litigation. The case must be extraordinary, in that unusual litigation results. *Held,* that the finding herein that this was a case of that character was not justified by the evidence.

ON REARGUMENT.

Argued July 13, 1892. Decided Aug. 29, 1892.

Rent Accruing after Assignment. — Upon reargument and re-examina-tion of the evidence, it is *held* that the trial court should have passed upon the validity of the claim mentioned in the fourth subdivision of the syllabus preceding the original opinion herein, and that, upon the undisputed facts, the finding to the effect that the assignee in good faith settled a disputed claim by way of compromise was insufficient to warrant the allowance of the amount paid out by the assignee.

Appeal by the creditors of Shotwell, Clerihew & Lothman from an order of the District Court of Hennepin County, *Hooker,* J., made July 7, 1891, approving and allowing the final report and account of Albert H. Lindeke, their assignee.

Theodore Shotwell, Alexander M. Clerihew, and William Lothman were partners in trade on June 20, 1888, at Minneapolis, Minnesota, as wholesale merchants in dry goods, notions, and similar merchandise. They occupied a building on the southeast corner of First Avenue, south, and Second Street, which they rented from George A. Brackett, the owner. On that day they made a general assignment under Laws 1881, ch. 148, of all their nonexempt property to Albert H. Lindeke in trust for such of their creditors as should prove their claims and file releases pursuant to that statute. He accepted the trust, gave bond in the sum of $1,200,000, and entered upon the discharge of his duties as such assignee. The assets were inventoried and valued at $682,849.67. He converted them into money, and realized therefor $591,999.38.

The claims of creditors presented and finally allowed amounted to $1,002,979.81. There was considerable litigation in settling these claims. Geo. A. Clark & Bro., of Boston, Mass., presented to the assignee a claim for $146,333, which he disallowed. The firm appealed to the District Court, where it was referred to George C. Ripley, Esq., for trial. He allowed the claim, and the assignee appealed to this court, where the judgment of the District Court was affirmed. *Clark* v. *Lindeke,* 43 Minn. 463. The same firm pre-

sented to the assignee another claim for $77,864, which he also dis-
allowed. The firm appealed to the District Court, where it was
again disallowed. The firm then appealed to this court, where the
disallowance was affirmed. *Clark* v. *Lindeke,* 44 Minn. 112. Wil-
liam Clark, one of that firm, presented to the assignee another claim
for $150,000, which he disallowed. The claimant appealed to the
District Court, where it was again rejected, and he appealed to this
court, where the disallowance was affirmed. *Clark* v. *Lindeke,* 44
Minn. 179. One of the creditors, on behalf of all, applied to the
District Court for an order directing a distribution of the estate
among the creditors without filing releases. The order was granted.
The insolvents appealed to this court, where the order was reversed.
*In re Shotwell,* 43 Minn. 389.

Some parties who had sold goods to the insolvents on credit re-
plevied them on the ground that the sales were revocable at their
election because of the fraudulent concealment by the purchasers of
their insolvent condition. In this way, goods to the value of
$13,640.18 were taken from the assignee. Some of the creditors
brought suits in Wisconsin and the Dakotas, where parties lived
who had bought goods of the insolvents on credit, and in those suits
attached the debts or garnished the debtors. In this way $13,708.14
was diverted from the hands of the assignee.

The principal part of the assets was a stock of goods and fixtures
in the Brackett building, valued in the inventory at $459,566.35.
The assignee sold therefrom prior to September 14, 1888, in the or-
dinary course of business, merchandise to the amount of $41,053.09.
He then made inventories of the residue, classified under different
lines of trade, and advertised and exposed the goods for sale at auc-
tion according to the inventories, and received bids, but none were
satisfactory, and he then offered the whole in one parcel. The as-
signee's brother, William Lindeke, bid eighty and five-eighths per
cent of the value, as entered in the inventories, and his bid was ac-
cepted and he became the purchaser. He paid down $50,000 upon
t he purchase. Application was made to the District Court, and the
sale was confirmed September 25, 1888, and the balance of the

price, $294,046.08, paid the same day by check on the National German American Bank of St. Paul. This check and the one for the $50,000, the assignee at once deposited to his credit as assignee in that bank. To raise this money Wm. Lindeke had procured his friends to sign notes for his accommodation. These notes were payable on demand, and were discounted at this bank. He was one of the directors of the bank. A few days after his purchase of this stock of goods he sold it to the firm of Lindekes, Warner & Schurmeier for exactly the same price he gave for it, and got its checks, with which he paid the accommodation notes. The assignee and his brother the purchaser were both members of the firm of Lindekes, Warner & Schurmeier. The goods were removed from the Brackett building directly to their warehouses in St. Paul. The assignee then removed his account as assignee from the bank, and opened one with his firm, and gave it on October 3, 1888, his check on the bank for the money, $344,046.08. The firm gave the assignee credit on its books for the money, and it remained with the firm until dividends were declared and paid to the creditors of the insolvents. The first dividend was thirty per cent., made February 5, 1889. The second was ten per cent., made August 12, 1890. No dividend was paid on the claim allowed to Geo. A. Clark & Bro. until after the appeal to this court was determined on June 13, 1890. Thirty per cent. on that claim was then paid, together with $4,611.64 interest on the dividend during the delay. No interest was paid to the assignee by Lindekes, Warner & Schurmeier on the money left in their hands.

On August 1, 1886, Shotwell, Clerihew & Lothman rented of George A. Brackett his five story brick block on the southeast corner of First Avenue, south, and Second Street, in Minneapolis, with engine, boilers, elevators, and machinery therein, for the term of five years from that date, agreeing to pay him rent therefor as follows: $10,000 per annum for the first two years; $11,000 for the third year, and $12,000 per annum for the last two years. The rent was to be paid in montly installments on the last day of each month. After the assignment the assignee continued the possession of the building under the lease, and paid rent up to November 1, 1888, and then

removed and surrendered the possession. The owner then presented his claim for rent for the two years and nine months unexpired of the term, $32,000; but offered to compromise for $6,000. The assignee, after consulting his attorneys and some of the principal creditors, accepted this offer, and on April 20, 1889, paid Mr. Brackett the $6,000, and took from him a bond with sureties to repay the money, and save the assignee harmless, in case the court refused to approve the compromise. No one of the creditors objected to this settlement except Geo. A. Clark & Bro.

The assignee employed Messrs. Wilson & Lawrence as his attorneys and counsel in the business, and they acted for him up to the death of Mr. Wilson, on April 10, 1890. Their charge for services was $10,000. After that date Mr. Lawrence acted, and charged $2,500 more. Mr. C. W. Bunn was employed to argue the three Clark appeals in this court, for which he charged $1,000. In the various replevin and attachment suits above mentioned local attorneys were employed, and paid altogether about $1,800. On this final settlement of the assignee's account he employed Hon. Walter H. Sanborn and Hon. John M. Shaw, and they each charged him $1,500. The assignee asked the court to approve these charges for legal services, and to allow him for his services as assignee $25,000.

On April 11, 1891, the assignee presented to the District Court his final report and account, and asked to have his proceedings, expenditures, and charges approved, and a final dividend declared. Many of the creditors appeared and filed objections, and contended that the stock of merchandise sold September 14, 1888, was in fact purchased by the firm of Lindekes, Warner & Schurmeier, of which the assignee was a member, and at about $80,000 less than the appraised cash value, and that he and his firm had realized more than $100,000 profit out of the transaction, which in law should be accounted for and added to the assets of Shotwell, Clerihew & Lothman. The creditors also claimed that the assignee and his partners had the use of the money for a long time, and that he should be charged with interest. They objected to the expenditures reported, and to the attorneys' fees, and his claim for his own services, as ex-

cessive, and Geo. A. Clark & Bro. objected to the payment of the $6,-000 to Mr. Brackett.

The matter came on to be heard before the District Court on May 6, 1891, oral evidence was given by the parties in interest, and the assignee was examined on oath. All the checks and vouchers were produced, and the bank accounts, and the assignee's account with the firm of Lindekes, Warner & Schurmeier, and submitted in evidence. On July 7, 1891, the District Court made and filed findings of fact, and approved and allowed the assignee's account, and overruled all the objections, and ordered a final dividend of seven and a half per cent. A case was made, settled, and signed, setting forth the assignee's petition for final discharge, the objections thereto filed by creditors, and all the exhibits offered and the oral evidence of the witnesses examined. The creditors then on September 16, 1891, appealed to this court, and the clerk of the District Court made return by sending here a copy of this settled case.

After the decision of this court, counsel for appellants obtained a rehearing upon two of the minor questions involved, and the decision was, after argument, modified as to one of them, as stated in the opinion handed down on August 29, 1892.

*Charles B. Meyer, Jackson & Atwater,* and *Keith, Evans, Thompson & Fairchild,* for appellants.

They contended that the sale of the stock of merchandise made by the assignee on September 14, 1888, was in fact made to Lindekes, Warner & Schurmeier, of which firm both he and his brother William Lindeke were members. That the sale was made to the firm on credit. That the purchase price was much below the real value of the goods. That the firm paid for the goods only after it had resold them in the course of trade. That Lindekes, Warner & Schurmeier had realized a profit in the transaction exceeding $100,000, and had, by the management of the assignee, succeeded to the business and good will of the insolvent firm. That the notes to, and checks made upon, the National German American Bank, were a mere cover of the real transaction, and on which no money was in fact paid, and

were many times larger in amount than the bank could lawfully discount under the Federal banking law. They set forth in their printed briefs many collateral minor incidents disclosed in the evidence, corroborating their view of the case, and claimed that the inference was so irresistible that this court should set aside the finding of fact on this point made by the trial court.

They stated that the assignee could not in law purchase the goods from himself, nor could his firm purchase. That if his firm did in fact purchase, the sale was void, and he, as assignee, was chargeable with all the profit realized by the firm from the transaction. In support of this position they cited, commented on, and set out extracts from, the following authorities: *King* v. *Remington*, 36 Minn. 15; *Lewis* v. *Welch*, 47 Minn. 193; *Tilleny* v. *Wolverton*, 46 Minn. 256; *Baldwin* v. *Allison*, 4 Minn. 25, (Gil. 11;) *Jewett* v. *Miller*, 10 N. Y. 402; *Ex parte James*, 8 Ves. 337; *Michoud* v. *Girod*, 4 How. 503; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Ex parte Burnell*, 7 Jur. 116; *Wormley* v. *Wormley*, 8 Wheat. 421; *Randall* v. *Errington*, 10 Ves. 423; *Davoue* v. *Fanning*, 2 John. Ch. 265; *Heirs of Wood* v. *Nicholls*, 33 La. Ann. 744; *Succession of Stanbrough*, 37 La. Ann. 275; *Chaffe* v. *Farmer*, 34 La. Ann. 1017; *Carroll* v. *Cockerham*, 38 La. Ann. 822; *Cook* v. *Collingridge*, Jac. 608; *Docker* v. *Somes*, 2 Mylne & K. 664; *Appeal of Baker*, 120 Pa. St. 33; *McLaughlin* v. *Fulton*, 104 Pa. St. 161; *Deegan* v. *Capner*, 44 N. J. Eq. 339; *Romaine* v. *Hendrickson*, 27 N. J. Eq. 162, 28 N. J. Eq. 275; *Culver* v. *Culver*, 11 N. J. Eq. 215; *Jones* v. *Dexter*, 130 Mass. 380; *Abbot* v. *American Hard Rubber Co.*, 33 Barb. 580.

If not charged with the profits, then the assignee should be charged with interest on the money of the trust estate while it was in the hands of his firm. *Perkins' Estate* v. *Hollister*, 59 Vt. 348; *Duffy* v. *Duncan*, 35 N. Y. 187; *Page* v. *Holman*, 82 Ky. 573; 1 Perry, Trusts, 471; 2 Story, Eq. Jur. § 1277.

The assignee should be allowed for his services no more than the percentage named in the statute. Laws 1889, ch. 30, § 8. He should not be allowed for counsel fees on this final proceeding to close his trust.

Counsel for Geo. A. Clark & Bro. objected to the payment of $6,000 to Brackett in settlement of his claim for rent, citing *Wilder* v. *Peabody*, 37 Minn. 248.

*Walter H. Sanborn* and *John M. Shaw*, for the assignee.

They admitted the appellants' contention as to the law of trusts was substantially correct, but claimed that both the Lindekes had testified, and the trial court had found, that the assignee had no interest in the purchase until after the sale was made and confirmed. That it was firmly settled that where an assignee or trustee makes a sale of the trust property to a third person without any arrangement, agreement, or understanding made before or at the sale with such third person, he is thereafter just as free to buy the property of the purchaser as any other individual, and the property thus purchased by him will not be charged with the trust, nor will he be liable to be charged with interest or profits. *Wortman* v. *Skinner*, 12 N. J. Eq. 358; *Munn* v. *Burges*, 70 Ill. 604; *Boehlert* v. *McBride*, 48 Mo. 505; *Bush* v. *Sherman*, 80 Ill. 160; *Foxworth* v. *White*, 72 Ala. 224; *Kennedy* v. *Keating*, 34 Mo. 25; 1 Perry, Trusts, § 133, note 3; Id. § 134, note 1.

Upon this question of charging the assignee with profits the only real question is whether or not there is evidence reasonably tending to support the findings of the trial court that William Lindeke's purchase on September 14, 1888, was for himself, without any previous arrangement, agreement, or understanding that it was or should be for the assignee, or the firm of Lindekes, Warner & Schurmeier.

The assignee is not chargeable with interest on the moneys of the estate which he deposited in his name as assignee with his firm of Lindekes, Warner & Schurmeier. Even if the firm of Lindekes, Warner & Schurmeier had used the moneys deposited with them by the assignee in their business, inasmuch as the assignee has ever had it ready to pay to the creditors, was not required to invest it so as to earn either interest or profit, has promptly and seasonably distributed it, and received no interest or bonus for such deposit, he could not be charged with interest. *In re Hess' Estate*, 68 Pa. St. 454; *Rapalje* v. *Hall*, 1 Sandf. Ch. 399; *In re Estate of Schofield*,

99 Ill. 515; *McKnight* v. *Walsh*, 23 N. J. Eq. 136; *Minuse* v. *Cox*, 5 John. Ch. 441.

As to the allowance of compensation to the assignee and his attorneys, this court is not in as good a situation to determine these matters as was the District Court. *Trustees* v. *Greenough*, 105 U. S. 527.

As to the allowance of the $6,000 paid by the assignee in settlement of the claim of Mr. Brackett, all the creditors but one, that is, all the large ones, consented to this compromise, and signed a petition to that effect.

COLLINS, J. This appeal is from an order of the district court auditing and allowing the final account of respondent, Lindeke, as the assignee of the firm of Shotwell, Clerihew & Lothman, who assigned for the benefit of creditors on June 20, 1888. This firm was a large wholesale concern, dealing generally in dry goods and notions at Minneapolis. The assignee — selected because of his peculiar qualifications and fitness for so important a trust—was a member of the firm of Lindekes, Warner & Schurmeier, a very prominent house, engaged in the same line of business in St. Paul. The stock and fixtures of the insolvents, less goods replevied after the assignee took possession, were inventoried and appraised at $459,566.35, while the accounts and bills receivable, less some in Wisconsin and Dakota, which were seized on attachment, were inventoried and scheduled at $223,283.32. There was received from sales of goods and fixtures the sum of $386,581.51, and from cash in hand, accounts, bills receivable, and other sources, the sum of $205,417.87, a total of $591,999.38. The total amount of established liabilities on which dividends, two in number, have been paid by the assignee, is $1,002,979.81. From these figures it will be seen that in value the assigned estate was no ordinary one. Prior to the sale in gross on the order of the district court, as hereinafter stated, the assignee had realized the sum of $41,053.09 from sales of goods. On September 14, 1888, by order of the court and at public auction, the fixtures and the remainder of the goods were sold to the highest bidder for 80 5-8 per cent. of the appraised valua-

tion according to the inventory, or for the sum of $345,528.42, and this sale was approved by order of the court. There were several bidders present at the sale, but William Lindeke, a brother of the assignee, and also one of the firm of Lindekes, Warner & Schurmeier, was the successful bidder, and a large percentage of the goods so bought thereafter became a part of the stock of the firm just referred to, and were sold by it in the usual course of business.

It is urged by appellant creditors as one objection to the allowance of the account that the assignee has failed to charge himself with the amount of profits derived by his firm from a sale of the goods purchased by William Lindeke on September 14th, the contention being that from the testimony it conclusively appears that the sale, nominally to the last-named person, was in reality to the firm, of which the assignee, as well as the purchaser, were members; the rule invoked being that well stated in *Abbot* v. *American Hard Rubber Co.*, 33 Barb. 593, that a trustee cannot, directly or indirectly, by himself or through the agency of another, become the purchaser of trust property, nor can he be permitted to purchase an interest in the same. The substance of this rule, and the principle on which it rests, have been fully recognized in *Baldwin* v. *Allison*, 4 Minn. 25, (Gil. 11;) *King* v. *Remington*, 36 Minn. 15, (29 N. W. Rep. 352;) *Lewis* v. *Welch*, 47 Minn. 193, (48 N. W. Rep. 608, and 49 N. W. Rep. 665,) and other cases in this court, and enforced unhesitatingly where warranted by the facts. So the only question here is as to its application. The trial court found, when disregarding appellants' objection, that the fixtures and goods purchased at the sale of September 14th by William Lindeke were not, in truth or in fact, bought by the assignee, or by the firm of which he was a member, and that neither said assignee nor the said firm had any interest, direct or indirect, in the purchase. This finding of fact was certainly broad enough, if sustained by the testimony. There can be no doubt but that proof was submitted upon the trial of acts and circumstances of a suspicious character, strongly tending to establish appellants' contention that the sale to William Lindeke was in reality to the firm of which he was a partner. But these acts and circumstances were susceptible of two opposite

constructions, one consistent with perfect fidelity on the part of the assignee. Again, these acts and circumstances were met and opposed by others, and also by the positive testimony of the assignee and of the purchaser, that the property was not bought for the firm, and that it had no interest in its purchase, immediate or remote, and had no interest in the goods purchased, until some time after the sale of September 14th. A trustee is only prohibited from dealing with the trust .property for his own benefit so long as the trust continues. When his duty towards the property ceases, he occupies the same relation to it as does a stranger to the trust, and, acting throughout in good faith, may become the owner of the property by purchase or otherwise. *Munn* v. *Burges,* 70 Ill. 604; *Bush* v. *Sherman,* 80 Ill. 160; *Foxworth* v. *White,* 72 Ala. 224; *Wortman* v. *Skinner,* 12 N. J. Eq. 358; *Boehlert* v. *McBride,* 48 Mo. 505; 1 Perry, Trusts, § 133. There was evidence reasonably tending to sustain and support the finding under consideration. We do not think that relied on by appellants is sufficiently strong to overcome and overthrow the conclusion of the court below.

The trial court held that the assignee was not chargeable with interest or use or profits on moneys deposited with the firm of Lindekes, Warner & Schurmeier, and of this appellants complain; citing the leading case of *Docker* v. *Somes,* 2 Mylne & K. 664. The law on this subject is well put in 1 Perry, Trusts, § 429, thus: "Trustees cannot make a profit from the trust funds committed to them by using the money in any kind of trade or speculation, or in their own business." But a trustee is not to pay interest solely because he has deposited the trust funds with his own, or even because he makes use of them in his business, unless there be superadded some breach of the trust. *Rapalje* v. *Hall,* 1 Sandf. Ch. 399; *In re Hess' Estate,* 68 Pa. St. 454. In fact, in *Docker* v. *Somes, supra,* and in all of the cases cited by appellants, the right to recover interest or use or profits was expressly based upon the fact that there had been a palpable breach of the trust. See *Norris' Appeal,* 71 Pa. St. 106; *Seguin's Appeal,* 103 Pa. St. 139. Also cases in footnotes, 1 Perry, Trusts, §§ 427–429. An assignee, whose stewardship is merely temporary, and not a continuing one, is not required

to invest the funds which may come into his hands that they may earn interest or return a profit. His duty is to safely keep the money in hand, so that it may be promptly and seasonably distributed in the way of dividends among the sharing creditors. No claim is made in this instance that the money was unreasonably retained, or that the payment of dividends was improperly delayed; and there was no testimony offered or produced tending to show that the money deposited with the firm was used by it. The question, the exclusion of which is the foundation for appellants' ninth assignment of error, had no tendency to produce an answer which would have disclosed that the firm had actually used the money, and the counsel made no attempt to go further in that direction, although an opportunity was afforded in the direct examination of Mr. Schurmeier,—the financial man of the concern. There was no proof that the assignee or the firm of which he was a member used the money, or made a profit out of it; there was no delay in the payment of dividends, no failure in the performance of a duty, and no breach of trust with respect to the trust funds. The conclusion of the trial court was right on this point.

A claim of $32,000 was made against the estate by Mr. Brackett, of whom the insolvent firm had leased their place of business. The term was unexpired, and the rent reserved amounted to the sum above mentioned. It was claimed by one of the attorneys for the creditors that the claim should not be allowed, because within the rule laid down in *Wilder* v. *Peabody,* 37 Minn. 248, (33 N. W. Rep. 852;) but counsel for the assignee advised him that there was a marked difference in the cases, and there may have been. After some negotiations between the assignee and the claimant, the latter consented to compromise his demand for the sum of $6,000. All of the larger creditors, save one, joined in a request to the assignee that he accept the offer of compromise, and, acting on the advice of his counsel, he did so. We regard the finding of the court on this point as equivalent to a finding that the assignee acted in good faith in the settlement of a disputed claim, by way of compromise. The court below did not err when allowing this item.

As the counsel for appellants did not see fit to discuss such other assignments of error as relate to the admission or exclusion of testimony on the trial, we are of the opinion that none of the assignments should be considered at length. It will suffice to say that none seem to be well taken.

The various items of disbursements objected to by appellants, and covered by the fourth assignment of error, were properly charged against the trust fund.

We now come to a consideration of the amount allowed to the assignee—$25,000—as compensation for his services, and to the attorneys—$1,500 each—who appeared for him in the present proceedings, but who were not the general attorneys employed in the matter of the insolvent estate. From a statement of the assignee, styled an "expense account," we learn that over $20,000 was disbursed in what are called "clerical services and sundries." This does not include some items of fees paid local attorneys, employed, we judge, in various places outside of Minneapolis, and the fees paid attorneys employed in the cases of Clark v. Lindeke, 43 Minn. 463, (45 N. W. Rep. 863,) and 44 Minn. 112, 179, (46 N. W. Rep. 326, 339,) a total, as we make it, of about $2,000. It does not include any part of the sum ordered to be paid the regular attorneys of the assignee for services rendered up to a day or two after the examination of witnesses began in this proceeding, fixed at $12,500; no objection being made. But it does include salaries paid for clerks and bookkeepers, who, judging from their compensation, were men of more than ordinary business capacity. Prior to the amendments to the insolvency law found in Laws 1889, ch. 30, there had been no attempt to regulate or control the compensation of assignees, or the fees of attorneys, in insolvency proceedings. By section eight (8) of that chapter the legislature undertook to fix by a graduated scale, based on the proceeds of the estate, the amount which should be paid to assignees, and, with less definiteness, the fees of their attorneys. Assignees are to receive, in ordinary cases, not to exceed ten per cent. on the first $1,000 of the proceeds, five per cent. on the balance up to $5,000, and two per cent. on the excess. This plain

provision of the law could be easily applied in all cases were it not for the complication which grows out of the very careless language used in the clause which follows, in which attorney fees are referred to. The allowance for attorneys shall not exceed $150 in ordinary cases where the gross proceeds of the estate do not exceed $3,000. If in excess of that sum, "or in extraordinary cases, involving unusual litigation, the fees of the assignees or receivers, as well as of the attorneys, shall be fixed by the court at the reasonable value of their services." Construed literally, and without reference to the first part of the section, the latter clause conferred full power upon the district court to fix the fees or compensation of assignees in all cases where the amount received as proceeds exceeds $3,000, and also where the proceeds are less than that amount, "in extraordinary cases, involving unusual litigation." But this section must be construed as an entirety, and its fair meaning is that the assignee's compensation shall be the specified percentage, except in extraordinary cases, where there has been unusual litigation. Unless the facts here have brought this case within the exceptional class in which compensation is to be fixed at the reasonable value of the services, and in which a discretion must be exercised by the court, not to be interfered with on appeal unless abused, the respondent assignee is entitled to compensation on the percentage basis only. The proceeds or receipts, aggregating $591,999.38, as before stated, would entitle him to $12,039.98,—less than half the sum actually allowed. The court below declared by its findings of fact that this was a case of the exceptional class, specially provided for by statute, and this finding is assailed by appellants' fifth assignment of error. It will be noticed that to authorize discretionary action in relation to an assignee's compensation the case must be extraordinary, in that unusual litigation has resulted, presumably taking the assignee's time and attention. An assignment with ordinary litigation is not sufficient. Now, in that at bar we are unable to discover that it was extraordinary, except in the amount of the liabilities and the value of the assets. We are free to admit that an assignment of this magnitude is quite uncommon in this jurisdiction, but evidently the legis-

lature has not provided for assignees of very valuable estates, in the absence of unusual litigation, save on the percentage plan. The insolvents had a stock of very salable merchandise, as is evidenced by the fact that more than eighty-four per cent. of its appraised value was realized in cash, within less than four months,—an unusually quick sale. The collections, mostly made within one year thereafter, and by one of the insolvents, in the assignee's employ on a large salary, do not seem to have been particularly troublesome, and the balance of the estate was nominal. Save in amount and value of the assets the assignment was not extraordinary.

The testimony in respect to the litigation was meager. The assignee states the number of lawsuits in this state at about ten. The first of the *Clark Cases*, 43 Minn. 463, (45 N. W. Rep. 863,) consumed ten days' time before the referee, while the others, 44 Minn. 112, 179, (46 N. W. Rep. 326, 339,) were tried in district court in one day. In all of these cases the questions were largely of law, not of fact. Two actions of claim and delivery were actually tried, one lasting two days. No real litigation resulted from the bringing of the balance of the lawsuits, all being in claim and delivery. Quite a number of attachments were made in Wisconsin and the Dakotas, but there is nothing to indicate that litigation followed the commencement of the actions and the seizures under the writs. The consequences of the seizures seem to have been acquiesced in without legal controversy. There are few assignments in which more or less litigation does not follow, and the statute in regard to fees and compensation was enacted with reference to the fact. We are warranted in saying that very few estates of this character and value could be put into insolvency and brought to the point of final distribution and settlement with less; none of the same being important except the *Clark Cases*, they becoming so because very large sums of money were at stake.

If, then, the litigation which resulted here was not unusual, so that the case became extraordinary in that respect, if it was no more than was to be apprehended from the value of the assets and the amount of the liabilities, that part of the statute which authorized the district court to exceed the percentage compensation had no pertinency. In

our judgment, it appears conclusively that this was not an extraordinary case, involving unusual—that is, uncommon—litigation, and therefore the compensation awarded the assignee for his services must be reduced to the sum before mentioned as the statutory percentage. Counsel have referred to the fact that a bond very large in amount was required and furnished; that there was a great responsibility assumed by the assignee; that he has manifested marked ability in discharging his duty; and that his firm met with losses in aiding and carrying along merchants indebted to the insolvents. All this is true, and would be equally true had there been an entire absence of legal contention. But the lawmakers, in fixing the compensation of assignees, receivers, and attorneys,—and not without good reason for so doing,—disregarded all these matters, and declared that, with the exception before noted, the basis for such compensation should be the net proceeds or receipts. This express declaration upon a subject which was fast becoming of the utmost concern to the creditors of insolvents must not be evaded, directly or indirectly.

As before stated, appellants objected to the allowance of any fees whatever to the attorneys for the assignee employed on the hearing of the present proceeding. It will be observed at the outset that the value of the services, whether considered in connection with the amounts paid the original attorneys for the assignee or as an independent claim, is not at issue. The objection is made solely on the ground that the expense was made necessary by reason of the assignee's misconduct, resulting in injury to the estate. From what has been heretofore said, it is obvious that the ground assigned is not tenable. But, in any event, it was part of the duty of the assignee to render a final account to the court. He was entitled to the advice and assistance of counsel when preparing and presenting the same, and, ordinarily, the fees of counsel for such services must be paid out of the trust funds. The case is remanded, with directions to reduce the amount allowed as compensation to the assignee in accordance with the views herein expressed.

(Opinion published 51 N. W. Rep. 909.)

COLLINS, J.   On examination of a petition for a reargument in the above-entitled matter, it was ordered that upon two questions a rehearing be had, and except as to these the petition be denied.   These questions were:   (1) As to the correctness of the ruling whereby the trial court allowed the item of $6,000 paid to George A. Brackett by the assignee.   (2) As to the correctness of the rulings of said court as to the admissibility of testimony tending to show that profits were made by the firm of Lindekes, Warner & Schurmeier on moneys deposited with the firm by the assignee.   With reference to the first question, it may be said that no distinction can be made between the claim presented by Mr. Brackett and that litigated in *Wilder* v. *Peabody,* 37 Minn. 248, (33 N. W. Rep. 852,) and hence no part of it was a proper demand against the assigned estate.   The action of the court below in allowing this item of the assignee's account was approved here on the ground that its finding of fact was, in effect, a finding that the assignee acted in good faith in the settlement of a disputed claim by way of compromise.   The trial court made no attempt to pass upon the legality of the demand itself, although the merits of the same were quite fully gone into by both parties.   Upon a re-examination of the evidence upon this point, we are satisfied that the good faith of the assignee was not the vital question, and that the court below should have found whether the demand was a legal one in whole or in part.   This was really made the main issue on the trial, the good faith of the assignee being regarded as incidental only, and not seriously questioned.   That the payment to Brackett was not considered as a completed settlement and compromise, and that it was intended and expected to have the court ultimately determine the validity of the claim, is manifest from the agreement in the nature of a bond, entered into by Mr. Brackett, wherein it was recited that the assignee had expressed a willingness to pay $6,000 in settlement, if such payment should be allowed by the district court, and in which was the condition that, if the claim

should be disallowed by said court, the money paid should be returned. While the court below allowed to the assignee the amount so paid as a proper disbursement, it was obviously upon the assumption that the actual liability of the estate was not in issue. This was error, for, on the conceded facts, this was just what should have been determined, and the finding made did not warrant the allowance. George A. Clark & Bro. are the only creditors who have contested this item in the assignee's account. Some of the appealing creditors expressly authorized the payment to Mr. Brackett, and others have never objected, and on appeal do not object, to it. The assignee will therefore pay to appellants George A. Clark & Bro. their percentage of the sum of $6,000, and to this extent the decision heretofore rendered is modified. We have seen no reason for changing our views in respect to the rulings of the court concerning the admissibility of testimony tending to show that profits were made out of the trust funds by the firm of Lindekes, Warner & Schurmeier, and on the second question our former conclusion is adhered to.

(Opinion published 52 N. W. Rep. 1078.)