# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

---

ST. PAUL TRUST COMPANY v. ABIGAIL S. STRONG and Others.[1]

December 13, 1901.

Nos. 12,696—(106).[2]

**Buyer and Seller at Same Time.**

A trustee cannot legally purchase on his own account that which his duty or trust requires him to sell—on account of another, nor can he purchase on account of another that which he sells on his own account. He is not allowed to unite the two opposite characters of buyer and seller.

**G. S. 1894, §§ 2841–2854.**

The foregoing well-established rule is not changed or abrogated by the provisions found in G. S. 1894, §§ 2841–2854, under which annuity, safe-deposit, and trust companies are organized in this state.

**Trust Company—Statutory Restrictions.**

The various restrictions and obligations which the statutes impose and cast upon these companies were introduced to safeguard and protect their patrons, and were not designed for the benefit or advantage of the organizations therein provided for. There was no intention to set aside well-settled rules for the conduct of private trustees by these provisions, but, upon the other hand, it was the object and purpose to insure a rigid observance of such rules by statutory restrictions and regulations.

**Trust Co. v. Kittson Distinguished.**

St. Paul Trust Co. v. Kittson, 62 Minn. 408, distinguished on one point, on the facts, from the present case.

---

[1] Reported in 88 N. W. 256.     [2] See note on page iv, supra.

85 M.—1.

Ratification—Knowledge.

> To establish the ratification of any particular act performed by another, the facts involved must not only be proven, but it must be shown that such ratification was made with full knowledge of all the material particulars and circumstances.

Mingling of Trust Funds—Interest.

> The general rule is that if an executor or trustee mingles trust funds with his own money, or uses the same in his private business, he will be charged with simple interest at the legal rate established by law, in the absence of special agreements, but this rule is subject to certain qualifications. And another general rule is that only in cases of fraud or flagrant breach of trust should a trustee be charged with compound interest.

Interest.

> Where a trust company has actually appropriated trust funds by mingling the same with its own money when depositing the same in banks, interest should be charged from the day it received the money, because of the fair presumption that it was used by the company from that day for its own profit.

Action in the district court for Ramsey county by plaintiff, as trustee under the last will and testament of Charles D. Strong, deceased, to determine the heirs and beneficiaries under said will and trust, and to settle and adjust its first account as trustee. Certain of the heirs and beneficiaries answered, objecting to the trustee's account. The case was tried before Bunn, J., who made findings of fact and as conclusions of law found, among other things, that the trustee's account should be surcharged with the amount of certain investments aggregating $78,200, and with the profits accruing therefrom, amounting to $27,745, and that the title to the real estate and securities representing said investments was in plaintiff individually. From an order denying a motion for a new trial, plaintiff appealed. Modified.

*W. J. Hahn, Harvey Officer* and *Davis, Kellogg & Severance,* for appellant.

*Humphrey Barton* and *M. S. Jamar, Jr.,* for respondents.

COLLINS, J.

This action was brought by the plaintiff, a corporation, as trustee named in the last will and codicil of Charles D. Strong,

deceased, for the purpose of having its first account settled and adjusted; and the defendants are the beneficiaries of the trust fund created by the codicil.

The testator died in January, 1890. The estate consisted almost wholly of promissory notes, aggregating in value $105,000, payable in five instalments; the last note maturing in February, 1894. The $105,000 represented by these notes was made a trust fund for the benefit of certain specified persons and institutions. The trust created was to collect this fund, to invest and reinvest the amount during the life of the testator's widow, and to accumulate an income to be used in paying to her $2,500 a year during her life, a small annuity to a friend of the testator, while the balance of this accumulation was to be destributed annually among certain specified beneficiaries, relatives of the deceased, and certain institutions. The notes were promptly met as they became due, and the amounts collected were at once credited to the trust estate on the company's books of account, which books were so kept that the actual amount of money in the trust fund could easily be ascertained by mere inspection; but the money itself was not kept separate from that belonging to the company, or from funds belonging to other trusts. All moneys were deposited in various banks to the credit of the company, as such, until February 18, 1898, at which time other accounts were opened in said banks in the name of the company as trustee.

The company made certain investments for the benefit of the trust estate, about which no questions have been raised by the beneficiaries; but as to six notes, secured by real-estate mortgages, the defendants objected, and, repudiating the same as improper investments, asked the court to strike out the amounts thereof, aggregating $78,000, and to surcharge the account on this basis. This was done. All of the items in any way connected with these notes and mortgages were stricken out of the account and rejected. The court also fixed the interest upon the amounts represented by these notes, and to be accounted for by the company, at the legal rate, compounding the same from annual rests. The rate fixed up to November 1, 1899, was seven per cent. per annum, but it was

reduced to six per cent. from that time, with the same rests; this reduction being based upon Laws 1899, c. 122.

The facts in connection with the rejected items were that on different days, commencing on November 17, 1890, and terminating June 4, 1892, the company owned these six notes in its corporate capacity, one being $2,000 in amount, one $16,000, and three for $20,000 each. When each note was taken by the company, payable to itself, and secured by a mortgage in which it was named as mortgagee, there were enough trust funds in its hands to cover the amount needed; and with these funds any of these investments could have been made in the name of the company, as trustee, directly for the trust estate. In each instance, soon after the notes and mortgages were taken, they were formally transferred and assigned by the company, in its corporate capacity, to the company, as trustee of the Strong estate, without the authority of the court, or consent of the beneficiaries, some of whom were minors. These transactions were, on the face of each, sales of notes and mortgages belonging to the trust company, as such, to the company as trustee; the latter being charged with and paying the full amount of the principal represented by the notes, with accrued interest. The court found as facts that, when taking these notes and mortgages in its own name, the comapny charged the mortgagors a commission for making the loans, and that no part of this commission went to the benefit of the trust estate. It was all retained by the company, but the amount does not appear.

1. Obviously, it was the duty of the company to invest the trust funds as the same came into its hands in accordance with the law, and for the purpose of accumulating a sum out of which it could make annual payments to the beneficiaries, and thus perform the other duty imposed and required by the instrument creating the trust. The principal question here is, has this been done? The basis of the objections made by the beneficiaries and sustained by the trial court was: First, that in every instance the company had converted trust funds to its own use immediately upon receiving the same, and therefore could not subsequently make any investments whatsoever as a trustee which would bind the beneficiaries;

second, that, as the notes and mortgages were owned by the company itself, it could not transfer the same to itself as trustee without an order of the court or the consent of the beneficiaries, because its self-interest would come in direct antagonism with its duty, the inevitable result being, it is contended, that all transactions made under such circumstances are voidable at the election of the beneficiaries.

The rule of law which forbids transactions whereby the personal interest of a trustee may be opposed to his duty has often been referred to and applied in this court. It was stated in Baldwin v. Allison, 4 Minn. 11 (25), that no rule is more fully settled than that which forbids a trustee's dealing with himself in respect to trust property; that no fraud, in fact, need be shown by the beneficiaries, and no excuse can be offered by the trustee to justify such transactions. The fact established, the result inevitably follows. This proposition has been repeated and affirmed in many cases. In King v. Remington, 36 Minn. 15, 25, 29 N. W. 352, 358, it was put in this form:

"The rule which disables one occupying a confidential or fiduciary relation in respect to property the subject of sale, from purchasing for his own benefit, and regarding him as a trustee if he do purchase, is absolute, and looks to no other facts than the relation and the purchaser."

In Webb v. Paxton, 36 Minn. 532, 32 N. W. 749, it was stated that the doctrine "does not depend upon the existence of intentional fraud, but is an inflexible rule, founded upon the fact that the two employments are incompatible."

It seems unnecessary to refer to other cases in our own Reports or elsewhere on this subject, but we cannot refrain quoting from a leading case (Michoud v. Girod, 4 How. 503):

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. The disability to purchase is a consequence of that rela-

tion between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility that in some cases the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests when he is the seller or buyer on his own account are directly conflicting with those of the person on whose account he buys or sells."

The doctrine is thus summed up: "A trustee cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own account. He is not allowed to unite the two opposite characters of buyer and seller."

Counsel for the company do not attempt to dispute the rule to which we have referred, and which is so well established, as a general proposition, but contend that it is not inflexible; that it is subject to many limitations and exceptions; that it is dependent upon circumstances and conditions, and whenever, under the circumstances of any particular case, or the law under which the trustee is acting, the interests of the beneficiaries and that of the trustees cannot conflict, the general rule does not apply, because the reason of the rule has ceased.

To particularize, it is argued that the transactions in question are not governed by the rule, because of the law under which the company was organized and is doing business. G. S. 1894, §§ 2841–2854. By reason of these sections, it is contended that it was impossible for the self-interest of the company in its private capacity to conflict with its duty as a trustee, and that in no manner could it gain an advantage over the beneficiaries by a transfer

of these securities. If this were true, it is probable that the reason for the rule would no longer exist. But are the premises sound upon which the contention is predicated, and have the statutes made it impossible for a conflict to arise between interest and integrity, and to have its dangerous tendency and influence?

This plaintiff was organized to transact an annuity, safe deposit, and trust business, and the statutes have thrown around such an organization rigorous regulations, and have imposed liabilities of a very stringent character. We need not specify all. The character of the securities in which trust funds are to be invested is specified. Section 2850. And among these (section 2844) are

"Bonds or promissory notes secured by first mortgages or deeds of trust, upon unincumbered real estate situated within this state, worth double the amount of the obligation so secured."

By the sixth subdivision of section 2849 it is provided that

"The directors of any such corporation shall have discretionary power to invest all moneys received by it on deposit or in trust, in any such personal securities as are not hereinafter expressly prohibited; and it shall be held responsible to the owners or 'cestui que trust' of such moneys for the validity, regularity, quality, *value* and genuineness of all such investments and securities *at the time* the said investments are so made, and for the safe-keeping of the evidences and securities thereof."

The italics are our own. These are among the safeguards thrown about the business by the legislature, and, taking them together, it is argued that self-interest on the part of a trust company has been wholly removed; that nothing impedes the proper discharge of its duties with trust funds; that because it is responsible under the statute for the validity, regularity, quality, value, and genuineness of notes and mortgages at the time the investments are made, it has been excepted from the general rule, and may transfer its own proper securities to any trust estate,— in other words, deal with itself.

The company offered to show at the trial that the investments made in this instance were such as the company was authorized to make under the law, and fully complied with the requirements found in section 2844; and, for the purposes of this opinion, we

assume this to be the fact, and also, as believed by the trial court, that the company exercised good faith in each of these transactions, and acted with a conviction that it was complying strictly with the law in respect to investments of the trust funds. This clearly appears, but the transactions are not to be tested in this way unless the statute has abrogated the rule; for, in any given case where there was no statute, it might easily and conclusively be made to appear that the security was abundant, taken in strict accordance with what are now the statutory requirements, and that the trustee acted in good faith, and with a belief that he was justified in the law in all respects. The real inquiry is, can the statute be construed as setting aside the rule, and as substituting therefor a radically different method in respect to trust investments?

It is hardly necessary to say that no absolutely radical departure from a thoroughly established doctrine ought to be made without very cogent reasons,—surely not by an inference that a change was intended by the enactment of a statute.

Now in this particular case the motives of the company cannot be questioned, but let us suppose that a trust company has invested large sums of money—its own funds—in notes and mortgages payable to itself; relying, as it should, and undoubtedly does, to some extent, upon the standing of the maker of the notes in the community, and his ability to pay when they become due. Later this maker, through some unfortunate transaction, has become reduced in circumstances, and is not of the best financial standing and ability; or suppose that his moral character has become tainted, his domestic relations unpleasant, and his business reputation thereby affected. Would there not be a strong inducement for the company to shift its securities, although their actual money value might still remain unquestioned, and answering in every way to the statutory requirements? Can it be said that there would not be a selfish reason for transferring the same from the assets of the company to the assets of the trust estate? Or suppose financial disasters were impending, and there was a possibility of more or less depreciation in the value of securities owned by the company, although they had not actually decreased at the time. Can it be said that under such circumstances there would be no motive on

the part of a trustee to unload such securities onto a trust estate? We are sure that this motive would exist, and in many cases lead to a sharp conflict between self-interest and duty. Or take another illustration. Suppose a defense was threatened,—unfounded, if you please, but imminent. Would not this be an inducement to transfer such securities to the trust, in the hope that it might prevail in the litigation, while the trustee company might be unsuccessful?

We could further illustrate the hazards which might surround and endanger trust funds, but it is unnecessary. And we have said nothing about the difficulty parties would have in establishing the actual value of real estate at the time the security was taken, when questions as to an adherence to the statutory requirements as to value were at issue years after the transaction. With these conditions in view, and others which might be suggested, we conclude that the learned trial court was quite right when it said that, had the legislature intended to abolish the well-known and well-established rule, it would not have done so by implication, and would not have left the matter to be inferred, but, on the contrary, would have expressly provided that investments might be made by trust companies in securities held and owned by such companies, provided they were of the character prescribed by law.

The fact is that the various restrictions and obligations which the statutes imposed and cast upon these companies were introduced to safeguard and protect their patrons, and were not designed for the benefit or advantage of the organizations therein provided for. There was no intention to set aside well-settled rules for the conduct of private trustees, but, upon the other hand, it was the object and purpose to insure a rigid observance of such rules by statutory restrictions and regulations. The design of this legislation was to promote and insure strict business principles in the management of these companies, and thus to protect the people. It was not intended to open the way to practices which might result disastrously to those whose pecuniary interests were in their keeping. We approve the action of the trial court in striking out the items involved, and in surcharging the account with the amounts attempted to be invested in these securities, and

all items which were related to or grew out of these attempted investments.

2. Counsel for the company make the claim that as these investments were technically irregular only, were made in good faith and with an honest purpose, it should be exonerated, and the investments approved, upon the coming in of its account; citing a number of cases in support of this contention,—among them St. Paul Trust Co. v. Kittson, 62 Minn. 408, 65 N. W. 74.

In that case it appeared that the plaintiff trustee deposited in a bank certain funds which were the actual and identical moneys received for the trust estate. Certificates of deposit were irregularly issued, payable to the company, but they actually represented the funds of the estate. These certificates were renewed, and very soon afterward, by proper indorsements, transferred to the trust estate. It was held that this method of investing trust funds was a mere irregularity, and that the certificates were a proper investment for the trust estate. That case is entirely different on the facts, and is not an authority for an approval of the transfers herein involved; nor do we find, upon examination of the authorities cited, any case which may be regarded as a departure from the well-established rule, and certainly none which would justify a court in overruling the objections made by these cestuis que trustent.

3. During the years 1891, 1892, 1893, and 1894 the company forwarded annual statements to the beneficiaries, with letters of transmittal, inclosing checks. These statements were transcripts of book entries, and it is very evident that the recipients were thereby informed that investments had been made, and interest collected, credited, and thereby distributed, and of the condition of the company's account with the estate. But these transcripts did not advise the beneficiaries that the notes and mortgages were originally the private property of the trustee, and had been transferred and assigned to itself as trustee. All of the facts surrounding these transactions were material for the information of the beneficiaries, if they were to be found by them in any manner. By simply failing to object to these investments when receiving interest derived therefrom, it is difficult to see how they can be said to have ratified

the plaintiff's acts, or how they can be estopped and precluded from questioning them when the real facts are first brought to their notice. To establish a ratification, the facts involved must not only be proven, but it must be shown that it was made with a full knowledge of all the material particulars and circumstances. Imperfect and incomplete information is not sufficient, and certainly there was nothing in the accounts, or in the letters, or in the checks for interest, which informed the beneficiaries of the real conditions, and that the trustee had not invested the trust funds in a regular manner.

4. The court below seems to have had much more difficulty with the question of interest than any other under consideration, but, as we said before, it fixed certain annual rests, and compounded therefrom at the legal rate, charging from the time the funds came into the plaintiff's hands. It, however, excluded $3,000 from the total amount on hand, of which we shall speak later. There was no testimony which would permit the court to find what profits or interest had been received by the company on account of the trust funds. It was not shown how its money was invested, aside from the notes and mortgages in question, and therefore it did not appear to what extent the company profited by the use of the money belonging to the Strong estate.

There are some inconsistencies in the decisions of the American courts as to what interest must be paid by trustees, and they cannot be harmonized. As a rule, however, these courts have repudiated the plan of charging and compounding interest from annual rests, as unjust, save under exceptional circumstances. After a careful examination of the authorities, and a consideration of the facts in this case, we are of the opinion that the court erred, and that simple interest only should be charged in cases where there has been no fraud or flagrant breach of trust. There was a total absence of fraud or flagrant breach of trust here. In the Kittson case, supra, this court, citing a number of authorities, stated that "whatever may be the rule in England, the general rule, which seems to be established in the United States by the great weight of authority, is that, if an executor or trustee mingles the trust fund with his own money, or uses it in

his private business, he will be charged with simple interest at the rate established by law as the legal rate, in the absence of special agreements. The rule is subject to the qualification that, if he receives or makes more than legal interest, he shall pay more."

This was merely a repetition of what was said in Crosby v. Merriam, 31 Minn. 342, 17 N. W. 950, and In re Shotwell, 49 Minn. 170, 51 N. W. 909, 52 N. W. 1078. See also Clarkson v. De Peyster, Hopk. Ch. 482; Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665; Alvis v. Oglesby, 87 Tenn. 172, 185, 10 S. W. 317; Estate of Perkins v. Hollister, 59 Vt. 348, 7 Atl. 605; In re Guardianship of Thurston, 57 Wis. 104, 15 N. W. 126; 2 Story, Eq. Jur. § 1277. Tersely stated, the rule established by the authorities seems to be that only in cases of fraud or flagrant breach of trust should a trustee be charged with compound interest.

5. The claim is also made that the company was entitled to a reasonable time within which to make investments after receiving the funds, and for this reason the court erred in charging the company with interest from the day it received the various sums of money. If this was a question of reasonable time, or whether within a reasonable time proper investments had been made, the authorities cited would be pertinent; for all are to the effect that a reasonable time within which to make investments must be allowed trustees. But the company did not invest the money at all, but actually appropriated it by mingling it with its own when depositing in the banks to the credit of its corporate account. It was charged interest from the days it received the money because of the fair presumption that it used it from those days for its own profit, there being no testimony to the contrary.

6. As before stated, the company was allowed the sum of $3,000 to meet current expenses, upon which no interest was charged, on the ground that such an amount was necessary to be reserved for the purpose of making disbursements from time to time, and perhaps at times when it was possible that the plaintiff would have no trust funds in its possession, unless expressly retained. The necessity of this, and the amount to be reserved, were questions of fact to be passed upon and determined by the court below. We see no reason to interfere with the finding in this respect.

7. It is also claimed that there were certain mistakes in the findings, made when calculating the total amount due, and plaintiff's counsel attempted by a motion in the court below to correct these alleged errors in computations. If mistakes were made, they can be very easily corrected by the trial court when again computing interest in the manner herein required.

8. We think all material questions have been considered and disposed of, and the result is that the case is remanded, with directions to the court below to compute the interest in accordance with our views, to correct any clerical errors which may have been made as to dates or amounts, and to cause judgment to be entered accordingly.