VICTOR C. LARSON AND OTHERS v. SECURITY BANK & TRUST COMPANY.[1]

No. 26,954.

March 8, 1929.

*Shaw, Safford, Putnam & Shaw* and *Milton I. Holst,* for appellant.

*Thomas Mohn, Horace W. Mohn* and *Charles P. Hall,* for respondents.

HILTON, J.

Appeal from an order denying defendant's motion for a new trial.

Andrew Larson died testate in 1913 in Goodhue county, Minnesota, leaving surviving him his widow, Anna S. Larson, and three sons, the latter being plaintiffs here. By the terms of the will and

[1]Reported in 224 N. W. 235, 226 N. W. 697.

210

the final decree (dated May 4, 1914) Mrs. Larson was given and assigned, for her natural life, certain real estate and personal property consisting of cash and securities aggregating about $14,000 in value, she to use the income and profits therefrom for her support and maintenance and also with power to sell and dispose of as much of the corpus of the estate as she might deem fit and necessary for her comfortable and necessary maintenance, care and support. Subject to her life estate and rights above referred to, the three sons were to share equally in the estate after specific legacies were paid. Mrs. Larson was required by the probate court to give, and did give, a $25,000 bond, properly conditioned, against permitting waste of the estate or the use thereof for any other purposes than in the will provided. On May 19, 1914, she turned over to the Security Loan & Trust Company, now called Security Bank & Trust Company, the defendant here, the personal property referred to for handling on her account, including the reinvestment of principal and interest, less such sums as she might deem necessary for her support; the defendant guaranteeing the payment of principal and interest of all investments made by it.

On December 22, 1926, Mrs. Larson died. In 1927 Victor C. Larson, one of the sons, brought an action against the defendant to recover his one-third share of the property and issue was joined. While this action was pending, defendant presented a petition to the same court for an accounting and distribution of the property to the three sons, all of whom filed objections. The action and the accounting proceedings were tried together. A stipulation was made whereby the sons accepted all items of property offered to be turned over excepting two Montana farms. Two Montana land mortgages—one known as the Baker mortgage for $2,000, and the other as the Barrett mortgage for $1,500, with items amounting to $1,500 for expenses of foreclosure and taxes paid upon the properties covered by the mortgages—constitute the $5,000 in controversy here. The sons demanded the $5,000 in money and refused to accept the land, claiming that it was no part of the estate; that defendant had no authority as trustee or agent of their mother to

purchase the mortgages in question from itself or the lands derived from the foreclosure thereof. The trial court made findings of fact and conclusions of law in favor of the sons (plaintiffs) and ordered judgment for $5,000.

The mortgages in question were acquired by defendant for itself as its own corporate property and not as trustee. In 1923 and 1924, respectively, defendant had the Baker and Barrett mortgages foreclosed (not as trustee) and after the expiration of the year of redemption received in its own name sheriff's deeds and acquired absolute title to the lands. On January 20, 1927, nearly a month after the death of the life tenant widow and when plaintiffs were the owners of the property of the estate in defendant's hands, defendant executed two deeds in blank, neither naming a grantee— one with date of acknowledgment not stated, covering the lands in the Baker mortgage, and the other the lands in the Barrett mortgage. They were placed in the defendant's files for the papers belonging to the estate. Neither mortgage was ever assigned to the estate nor to anyone representing it or interested therein, nor was there any assignment of the sheriff's certificates of foreclosure sale or deeds. The trust company did intend that the expenditures were for the benefit of the Larson estate and that the property should belong thereto.

The Baker mortgage as of date March 2, 1917, appeared in an entry made in the books of defendant as "held by Anna S. Larson Estate" and also entries as to expenses and taxes paid relative thereto. The same is true as to the Barrett mortgage, except that its date of entry was May 2, 1917. The name of that account was "Mrs. Anna S. Larson, Est. of Andrew Larson." Running through the general accounts of the defendant appeared interest items collected on these mortgages. Of date January 18, 1927, appears a charge for taxes and foreclosure expenses on the Barrett mortgage of $506.91, and same date a like charge relative to the Baker mortgage of $993.09. The items making up these totals are of various dates when they were charged to "suspense and tax acct."

■ The question is raised as to whether the defendant had the right to sell and transfer these securities owned by it to the Larson

estate. Under the common law this could not be done, nor could it on December 13, 1901, when St. Paul Tr. Co. v. Strong, 85 Minn. 1, 9, 88 N. W. 256, was decided. In that decision the court says:

"Had the legislature intended to abolish the well-known and well-established rule, it would not have done so by implication, and would not have left the matter to be inferred, but, on the contrary, would have expressly provided that investments might be made by trust companies in securities *held and owned* by such companies, provided they were of the character prescribed by law." [Italics ours.]

At the time of this decision the statute relative to trust companies provided in substance that investments of sums over $100 in the hands of trustees should be invested as soon as practicable. L. 1899, p. 210, c. 200, § 5. The legislature, knowing of this decision, in 1903 enacted what now appears as G. S. 1923, § 7738. The suggested language found in the opinion—"held and owned"—was not followed, but "held by it or specially procured by it" was used instead. A trust company generally owns securities of its own (as these mortgages originally were). It also holds securities as trustee which were originally turned over to it when it undertook a trust or which it had purchased by the use of trust fund money. Under the 1903 law, the defendant could have specially procured by purchase securities on the market with the Larson estate moneys, or could have purchased such securities held by it in some other trust fund. Could it buy, for that purpose, securities owned by itself? We think not. Had the legislature so intended it would have used the language of the St. Paul Trust Company case. The failure so to do shows a contrary intent. Even if the legislative intent is not manifest, statutes in derogation of the common law are to be strictly construed. St. Paul Tr. Co. v. Strong, 85 Minn. 1, 88 N. W. 256; Turner v. Fryberger, 94 Minn. 433, 103 N. W. 217, 110 A. S. R. 375; Arnold v. Smith, 121 Minn. 116, 140 N. W. 748; Congdon v. Congdon, 160 Minn. 343, 200 N. W. 76; Bandfield v. Bandfield, 117 Mich. 80, 75 N. W. 287, 40 L. R. A.

757, 72 A. S. R. 550; 39 Cyc. 366; 6 Dunnell, Minn. Dig. (2 ed.) § 8958.

The word "held" should be construed in the sense in which it is found elsewhere in the trust company laws. School Dist. No. 30 v. Cons. School Dist. No. 30, 151 Minn. 52, 185 N. W. 961. In G. S. 1923, § 7731, a trust company is authorized to "hold property in trust." This means having in possession and under control property (not its own) for others.

■ The laws governing trust companies call for rigid enforcement. Trust companies perform a most important and needful service; to them are given broad powers and privileges. As between a trust company and the cestui que trust the strictest accountability is required. St. Paul Tr. Co. v. Strong, 85 Minn. 1, 88 N. W. 256.

Anna S. Larson was in effect, at least as far as plaintiffs are concerned, a trustee of the property of the estate. She could use it only for the purposes and in the manner prescribed in the will and the final decree. She gave a $25,000 bond to guarantee this result. To her was given the power of handling all property and the investing of the moneys of the estate within the exercise of sound discretion. To relieve herself of the responsibilities devolving upon her and to make the defendant a lawful trustee, R. L. 1905, § 3041, now G. S. 1923, § 7736, must be complied with. It provides:

"The trustees of any estate or property may surrender and resign such trust in favor of such trust company which will accept the same, and convey and deliver to it all property and assets of such trust * * *. If such original trust was created under a last will, or an order or decree of a court of record, then such transfer shall not be valid except upon the judgment or decree of such court as would have jurisdiction of an action to remove the acting trustee, and full compliance with the terms and conditions of such judgment or decree."

The sons did not consent to the transfer of the estate property to the trust company nor did they know of the Montana mortgage and land transactions, nor was there any decree of court secured there-

for. The trust company could not and did not become a trustee de jure, and did not by the procedure here adopted relieve Mrs. Larson of her trust responsibilities; nor could it exercise the discretion vested in her under the final decree. Under the facts in this case, neither the Larson estate nor the plaintiffs ever became the owners of the mortgages in question nor of the land.

R. L. 1905, § 3044, now G. S. 1923, § 7739, relative to a trust company, provides:

"Besides its general books of account, it shall keep separate books for all trust accounts. All funds and property held by it in a trust capacity shall at all times be kept separate from the funds and property of the corporation * * *. Every security in which trust funds or property are invested shall at once, upon receipt thereof, be indorsed and transferred to it as trustee, * * * and not in blank or otherwise, and immediately entered in the proper books as belonging to the particular trust whose funds have been invested therein. Any change in such investment shall be fully specified in and under the account of the particular trust to which it belongs, so that all trust funds and property can be readily identified at any time, by any person."

There was a failure to comply with the terms of this law.

Defendant is accountable in money for the $5,000 portion of the Larson estate, and the plaintiffs are not required to take the land; this without taking into account the trust company's guaranty of all investments made by it. Defendant contends, and there is nothing in the record to the contrary, that the lands secured by the foreclosure are of value in excess of the principal, interest, taxes and costs of foreclosure. Fortunately for it, there will be no monetary loss. There is in this case no intimation of bad faith or lack of integrity on the part of the defendant or its officers. There was however a failure to follow the statutory requirements. A trust relationship is one jealously guarded by the law. Courts do and should so guard it, even in a case such as this, where loss in value is not involved and where there is no charge of an attempt to overreach or defraud.

The findings of the trial court are amply supported by the evidence, and its conclusions are correct.

Order affirmed.

UPON APPLICATION FOR REARGUMENT.

On August 2, 1929, the following opinion was filed:

PER CURIAM.

The petition for reargument herein, which is now denied, was considered in connection with the case of Kelly v. First Minneapolis Tr. Co. 178 Minn. 215, 226 N. W. 696.