## *In re* James Shea, Insolvent.

Argued May 28, 1894.   Affirmed June 11, 1894.

57  415
79  488

No. 8827.

**A receiver of an insolvent debtor's property is chargeable with its value if he sell it fraudulently.**

Where an insolvent and the receiver of his property under the insolvency law enter into a conspiracy by which the receiver agrees to sell the property to a third party, and have the third party transfer it to the wife of the insolvent for his benefit, *held* such sale by the receiver is fraudulent and void as to creditors, and the receiver is chargeable with the full value of the property so sold when that is more than the price received for the property.

**Order confirming a sale is not conclusive.**

*Held*, further, that an *ex parte* order confirming such sale is not conclusive as against the creditors, but may be set aside by direct proceedings for that purpose.

**Findings sustained by evidence.**

*Held* the evidence in this case is sufficient to sustain the order declaring fraudulent, and setting aside, such a sale.

**Receiver's final account, all the creditors to share in increase of net balance.**

Where, on an application of the receiver in such a case to settle his final account, a part only of the creditors object, and demand that the receiver account for the full value of the property so fraudulently sold, and the court so orders, *held*, such order inures to the benefit of all the creditors who have not waived their right to attack such sale by taking some position inconsistent with that right.

Other assignments of error disposed of.

Appeal by Daniel H. Moon, receiver, from an order of the District Court of Clay County, *D. B. Searle*, J., made October 26, 1893, denying his motion to vacate its order and decision regarding his final account.

James Shea of Glyndon in the winter of 1890–1 went to Massachusetts on a visit leaving his agent Sharpstein in charge of his business. Shea was taken sick and did not return as expected. His creditors became impatient and on March 2, 1891, Daniel H. Moon

was on the petition of some of them, appointed receiver of all his non exempt property under Laws 1881, ch. 148, § 2, as amended by Laws 1889, ch. 30, § 2. Moon accepted the trust and made and filed a verified inventory of the property in which its value was estimated at $13,209.97. It comprised a store building, fixtures and stock of merchandize; a saloon building, fixtures, and stock of supplies therefor; a hotel and the furniture and equipment thereof. Also 1120 acres of farming land partly improved but subject to incumbrances; seventeen horses and mules and other stock; farm implements, machinery, hay, grain and farming supplies, also notes and accounts. Shea's debts as shown by the schedule amounted to $6,749.33, but the proofs afterwards filed showed them to be $8,538.43. Shea soon after returned and on April 21, 1891, Moon on affidavit obtained an order allowing him to continue Shea's business, sell goods at retail, carry on the hotel and put in the crops. He put Shea in charge and gave him possession of the property. On May 23, 1891, Moon presented to the court affidavits and obtained an order that he sell all the property in gross at public or private sale and in the manner he might deem for the best interest of the creditors, but subject to the confirmation of the court, that the sale be made on June 13, 1891, at 9 A. M. at the front door of Shea's store in Glyndon, that notice be given by mailing to each of the creditors a copy of the order and publishing it two weeks in the Red River Valley News, a newspaper published at Glyndon. On the day appointed Moon sold all the property to Marcus Johnson for $2,350 and made report of the sale and advised that the sale be confirmed. This report was presented on June 15, 1891, to the court at Crookston in Polk county and an ex parte order obtained confirming the sale.

On October 23, 1891, Moon presented his account and obtained an order that the creditors of the insolvent show cause if any they have at Moorhead November 13, 1891, why this account should not be allowed, a dividend made and he discharged on payment thereof. On the day appointed a number of Shea's creditors appeared and filed objections. They alleged that Moon is a member of the firm of Allen Moon and Co., that Shea owes that firm $697.49, that Moon soon after his appointment entered into a secret contract with Shea to so conduct the business as to restore the property to him or to his wife for his benefit, for but a small part of its value; and that in

consideration thereof Shea should pay his debt to Allen Moon & Co. in full; that Marcus Johnson bid in the property at Moon's request and in aid of this agreement and that Shea furnished the $2,350 paid and that Johnson afterwards transferred and conveyed all the property to Shea's wife. The creditors asked permission to prove these facts and others before the court by witnesses subject to cross-examination. The court ordered such hearing and directed the parties to produce their witnesses for examination. The hearing was postponed and was finally had at Moorhead June 21, 1893. After hearing the evidence the Judge found that Moon as receiver agreed with Shea in April, 1891, to sell the property in gross for some trifling amount to some third party who should shortly thereafter transfer and convey the same at substantially the same price to Shea's wife or such other person as Shea should select, and that Shea should thereupon pay the claim of Allen Moon & Co. in full; that Moon procured Marcus Johnson to act as such third party; that he purchased the property in pursuance of this scheme; that the value of the property then exceeded $5,750 and that Moon knew this and did not act in good faith in the matter, that the sale to Marcus Johnson was fraudulent, that on October 16, 1891, Johnson conveyed and transferred all the property to Shea's wife and exacted from Shea and received therefor $5,750. The court directed that Moon be charged in his account with this sum for the property with interest thereon from June 15, 1891, in place of the $2,350 paid at the sale. A case was made, settled, signed and filed containing all the evidence given on this hearing and the rulings and exceptions taken.

On that hearing counsel for the creditors were permitted to give evidence of the market value of the property which the receiver sold to Marcus Johnson. This was appellant's ninth assignment of error.

On the hearing the counsel for creditors asked the witness, G. T. Schurmeier to state whether or not he learned from Shea before the objections were filed his version of the sale as given by him in court. To this the receiver objected as incompetent, irrelevant and immaterial. The objection was overruled and the receiver excepted to the ruling. The witness answered that he did. This was appellant's tenth assignment of error.

On the settled case and on the records and files in the matter the

receiver moved the court to vacate this decision and retry the question. This motion, opposed by the creditors, was denied by the court. From the order this appeal is taken.

*John B.*, and *E. P. Sanborn*, for appellant.

Mere inadequacy of price or the fact that a higher price might be obtained, is not sufficient ground to set aside a sale. *West* v. *Davis*, 4 McLean 241; *Whitbeck* v. *Rowe*, 25 How. Pr. 403; *Stiver's Appeal*, 56 Pa. St. 9.

The order of the court under which this sale was made and the order confirming the sale ought to protect the receiver. The findings and conclusions of the court below that this sale to Johnson was fraudulent and void as between the receiver and the creditors, are not justified by the evidence.

The objections of the receiver to the admission of the testimony of Schurmeier as to what Shea said to him when the receiver was not present, ought to have been sustained.

The only objection to the account is to the item of $2,350 realized from the sale to Johnson. The only parties who object to this item have claims against the insolvent amounting in the aggregate to about $2,300. The total amount of the liabilities of the insolvent proved up and allowed in this proceeding is $8,538.43. None of the other creditors made any objection. So that even if the findings of fact were sustained by the evidence, the order of the court at most should have been that the receiver pay to these objecting creditors their ratable proportion of $3,400. *In re Shotwell*, 49 Minn. 170.

*W. B. Douglass*; and *Warner, Richardson & Lawrence*, for respondents.

The order of confirmation of the receiver's sale did not preclude creditors from questioning the sale on the ground that it was sham or fraudulent. The order of confirmation did not operate as an adjudication, binding on all concerned, that the sale was free from fraud and valid. No notice was given creditors and the order was obtained *ex parte*. *Hackley* v. *Draper*, 60 N. Y. 88; *Williamson* v. *Berry*, 8 How. 495; *Woehler* v. *Endter*, 46 Wis. 301.

The question to Schurmeier and the answer made, show the only

object was to identify the conversation already testified to by Shea without objection and to fix the date of it as being before the hearing of November 13, 1891. Schurmeier was not asked to repeat what was said, but only to state whether the conversation referred to by Shea occurred before these objections were filed.

Perhaps creditors who did not formally intervene could not complain if the court ignored their rights to the full value of the property sold Johnson, but the opposite party cannot complain of the court, if it respects them. Every equity bill filed on behalf of all parties similarly circumstanced would present the same question. All are to share in the fund thus preserved for their benefit. Any other practice would tend to unnecessary labor and expense. If it had appeared in this case as in the *Shotwell Case* that all the rest had actually waived or confirmed the misdoing complained of, then a different question would be presented. Shea's property remains subject to his debts and justice is practically accomplished by compelling Moon to account for what has been realized by him and Johnson from Shea. Johnson was a mere figurehead representing Moon. The trust has been abused by Moon with Johnson's assistance. After they had involved Shea and had got $5,750 of his property into their own hands, they failed to keep faith with their partner, with the result usual in such cases. He disclosed the fraud to his creditors.

CANTY, J. Said insolvent, James Shea, resides at Glyndon, Minn. On March 2, 1891, a receiver was appointed by the District Court of Clay county of all his unexempt property for the benefit of his creditors under the insolvency law of 1881. The receiver, D. H. Moon, qualified, and proceeded to administer his trust.

On November 13, 1891, the matter came on for hearing on the final account of the receiver. Several of the creditors appeared, and objected to the item of $2,350 in his final account, being the proceeds of the sale made by the receiver on the 13th of June, 1891, of all the remaining property of the insolvent estate. This objection was made on the ground that this sale was fraudulent and collusive, and that the receiver, insolvent, and purchaser entered into a conspiracy before the sale to procure the transfer of the property to the wife of the insolvent for his use and benefit, and that the sale was made

pursuant to this agreement.    It was then ordered that this question be heard and tried on evidence taken in open court, which was done, and the court filed its findings of fact, in which it is found:

That the property which came into the receiver's hands was of the value of $13,209, and, after disposing of a part of it under the direction of the court, the balance of said property in his hands at the time of said sale was of the value of $5,750; that prior to said sale the receiver procured the insolvent to claim out of said property his exemptions for the purpose of misleading and deceiving the creditors as to the amount and value of the property available for the payment of debts; that the insolvent was then in possession of all of the property as the agent of the receiver, but the exempt property was never segregated, and the unexempt property was so sold without setting apart or determining what was exempt.

That prior to the sale it was agreed between the receiver and the insolvent that the receiver would obtain leave to and would make said sale, and sell all of said balance of the property so undisposed of for some small amount, less than its value, to some third person, who should shortly thereafter transfer all of the same to the wife of the insolvent on repayment of the sum paid for it, and payment of the sum of $919 due a firm of which the receiver was a member.

That, pursuant to this agreement, the receiver did, on May 23, 1891, obtain an order of the court ordering him to sell the property June 13th, "subject to the approval of this court," and to publish said order for two weeks prior to the sale in a local newspaper, and serve it by mailing a copy of it to each of the creditors, on or before May 27th; that the order was so served, the sale made, and confirmed by an *ex parte* order procured by the receiver from the judge of the District Court at Crookston, in the adjoining county and judicial district; that the property was afterwards, on October 16, 1891, pursuant to said agreement, transferred by the purchaser, Marcus Johnson, to said wife of the insolvent; that during all of this time the insolvent continued to be in the possession of the property,—before the sale as the agent of the receiver, and afterwards as the agent of the purchaser, Johnson.

As conclusions of law the court found that the receiver should not be charged with $2,350 as the proceeds of that sale, but with the sum of $5,750, the value of the property so sold, and the receiver was

ordered to pay that sum, with interest from June 15, 1891, into court. From an order denying a motion for a new trial of the issues so tried the receiver appeals.

The most of the assignments of error are to the effect that the findings of the court are not sustained by the evidence. We are of the opinion that there is sufficient evidence to sustain these findings. There is the positive testimony of the insolvent Shea, with much circumstantial evidence to corroborate it.

The *ex parte* order confirming this sale was not conclusive. This proceeding is not a collateral attack on that order, but a direct attack in the same proceeding, and, while the court should have formally ordered the order of confirmation set aside for fraud, still his "conclusions of law" in effect do so, and mean the same thing.

The aggregate claims of the objecting creditors amount to about $2,300, while the total liabilities of the insolvent amount to $8,538; and it is contended by appellant that the most the court should have done was to order the receiver to pay these objecting creditors their ratable proportion of the $3,400 which the court added to said item of $2,350, the price for which the property was fraudulently sold. In support of this position the case of *In re Shotwell*, 49 Minn. 187, (51 N. W. 909, and 52 N. W. 1078,) is cited. As far as that case applies that rule as against the creditors who expressly authorized the unwarranted acts of the assignee, and thereby estopped themselves from objecting to those acts, we are willing to follow that case, but no further. But while that case seems to hold that the benefit of the objection does not inure to the creditors not objecting, my associates who were then on the bench state that counsel for the appealing creditors not objecting stated in open court that they did not object to the unwarranted act there in question. We are of the opinion that the order of the court declaring the sale fraudulent, and charging the assignee with the value of the property, inured to the benefit of all the creditors who had not waived their right to attack that sale by taking some position inconsistent with that right.

The ninth assignment of error—the objection to the evidence as to the value of the property so fraudulently sold by the receiver—is not well taken; the evidence was competent.

The tenth assignment of error—the objection to the evidence of Schurmeier—is not well taken. Schurmeier testified that before his firm of creditors filed their objections he learned from Shea, the insolvent, his version of the affair "as given by him here in court today about this sale." This seems to be an effort to identify the time of other conversations as to which testimony had already been given. It was a matter of little importance, and to determine whether or not it was material would require much discussion, and the consideration of many details. If not material, it was not prejudicial. This disposes of all the questions raised, and the order appealed from should be affirmed. So ordered.

(Opinion published 59 N. W. 494.)