CHARLES A. TURNER v. WILLIAM O. FRYBERGER.[1]

April 28, 1905.

Nos. 14,268—(37).

**Executor and Administrator.**

Neither the administrator of the estate nor his attorney may, for their personal use and profit by a sale thereof, purchase an outstanding life estate in real estate of which the administrator is trustee. In such case the administrator is chargeable with and must account to the estate for the amount so realized.

In the matter of the estate of Jane Robbins, deceased, plaintiff Charles A. Turner, an heir, filed objections to the allowance of defend-

[1] Reported in 103 N. W. 217.

94 M.—28

ant's final account as administrator. The objections being overruled by the probate court for Hennepin county, an appeal was taken to the district court for that county, where the issues were tried before Willard R. Cray, J., who found in favor of defendant. From an order granting a motion for a new trial, defendant appealed. Affirmed.

*Harrison E. Fryberger,* for appellant.

*Julius E. Miner* and *Willoughby M. Babcock,* for respondent.

LEWIS, J.

Appeal was taken to the district court from an order of the probate court of Hennepin county allowing the account of the administrator of the estate of Jane Robbins, deceased.

The facts as found by the trial court are: W. O. Fryberger was appointed administrator with the will annexed, and employed his brother as an attorney for himself, as administrator, and for the estate. Mrs. Robbins left, surviving her, a husband, Nathan J. Robbins, and three children by previous marriages. At the time of her death she was seised and possessed of a house and lot in Minneapolis occupied by her as a homestead, in which her surviving husband succeeded to a life estate. May 20, 1901, the attorney of the administrator purchased from Robbins his life estate for $250, and received a deed therefor. June 1, 1901, the administrator sold the reversionary interest in the property for $700, and on the same day, to the same party, the attorney sold the life estate for $700, and separate deeds were executed conveying such interests to the purchaser. In his final account the administrator accounted for the $700 received from the sale of the reversionary interest. It was also found as a fact that the same attorney had been employed by Robbins to act for him in connection with the estate, for which services he was paid $75. The trial court allowed the administrator $50 for his personal services and $100 for his attorney. The court granted a motion for a new trial, without stating the grounds of the order.

The only question which we deem it necessary to consider on this appeal is whether the attorney occupied such a position with reference to the administrator and the estate that he was prohibited from profiting by the purchase and sale of the life estate. According to the annuity tables, Robbins' expectancy of life was a little over eleven years,

he being then sixty-four. There were some debts outstanding, and it was provided by the will that the property should be sold and the proceeds disbursed in a certain way. It was apparent that the property would sell more advantageously when the two interests were united than when sold separately, as neither interest would command its real value if offered for sale separately. It therefore became incumbent upon the administrator to use all reasonable means to unite with the owner of the life estate in disposing of the property. Neither the probate court nor the district court found what the value of the life estate was, but the evidence shows that it was agreed between the administrator and the attorney who purchased the life estate that the two interests were of equal value. It also appears that the commission appointed by the probate court determined the value of the life estate to be $700, but it does not appear that the court adopted the decision or fixed any value. There is some evidence tending to show that the attorney and the administrator made attempts to dispose of the property in conjunction with the surviving husband, and it also appears from the testimony of the attorney that he consulted the probate court with respect to the expediency of himself making such purchase, and was advised that it would be proper to do so.

The court is of the opinion that the attorney of the administrator was acting in good faith, believing he had a right to purchase the life estate and dispose of it at a profit to himself, and also acted in good faith in advising the administrator that he was not required to account therefor. It seems that the district court, in cutting down the fees of the administrator and his attorney from the amount allowed by the probate court, took into account the fact that a profit had been made in purchasing and disposing of the life estate. The principles governing a trustee with reference to property embraced within the trust are fully enumerated in King v. Remington, 36 Minn. 15, 29 N. W. 352, and subsequent cases. In respect to the purchase of property belonging to the cestui que trust by the trustee, the rule is that the relation of confidence is in itself sufficient, and no other fact than that relation need be shown. The rule is entirely independent of the fact whether any fraud has intervened, and it is to avoid the necessity of any such inquiry that the rule takes so general a form. Again, the rule stands on the moral obligation to refrain from

placing one's self in relations which ordinarily excite a conflict between self-interest and integrity. No party can be permitted to purchase an interest in property and hold it for his own benefit where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his individual use. Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655; Shadewald v. White, 74 Minn. 208, 77 N. W. 42; Donahue v. Quackenbush, 75 Minn. 43, 77 N. W. 430; and many other cases.

No distinction can be drawn between the administrator as the trustee of the estate, and his attorney. The attorney is simply the representative or the agent, and the administrator the principal. It necessarily follows that, if the administrator were himself prohibited from dealing in the life estate for his own profit, so must his representative and attorney be likewise prohibited. The position is not changed by the fact that the life estate was property not belonging to the estate, but existed as an independent right in the surviving husband, who had the power of disposing of it to whomsoever he would. The point is that there were conflicting interests between the two estates. If the administrator was required to realize the greatest amount which he reasonably could in the execution of his trust, in so doing he necessarily would come in conflict with the owner of the life estate, and his attorney could not represent the life estate owned by himself, and at the same time, as attorney, the reversionary interest under control of the administrator. The position of the attorney in this case is analogous to that of a broker who attempts to act for both parties to a transaction. "The vendor, in the employment of an agent to sell his property, bargains for the disinterested skill, diligence, and zeal of the agent, for his own exclusive benefit." Dartt v. Sonnesyn, 86 Minn. 55, 90 N. W. 115.

Under the facts of this case the parties are brought directly within the rule that the administrator was chargeable with the amount realized, and holds the same in trust for the estate. Perry, Trusts (5th Ed.) 197.

Order affirmed.