MARGARET STRONG BRETT and Warren B. Strong, Respondents, v. The ST. PAUL TRUST COMPANY, a Corporation, Robert J. Strong, Mrs. Robert J. Strong, Maggie Strong, and All Other Persons Unknown Claiming Any Estate or Interest in, or Lien or Encumbrance upon, the Property Described in the Complaint, Defendants. MRS. ROBERT J. STRONG, Appellant.

(193 N. W. 317.)

**Wills — provisions of will held to create express trust without vesting title or estate in cestui que trusts.**

1. Where a will devised land to a trustee with active duties concerning the collection of rentals and income therefrom and the payment of the net income

---

Note.—On recitals in tax deed as evidence of regularity of tax proceedings, as to advertising and notice of sale, and as to time, manner, and place of sale, see note in 30 A.L.R. 8; 26 R. C. L. 422; 5 R. C. L. Supp. 1411.

to beneficiaries in the discretion of the trustee during the lifetime of one of them, with the power, after his death, to sell the land and to pay the proceeds; in the discretion of the trustee, to certain beneficiaries, it is *held*, for reasons stated in the opinion, that an express trust was created with title vested in the trustee and without any title or estate being vested in the cestui que trusts.

**Taxation — tax deed void on its face where recitals show that tax sale upon which issued illegal.**

2. Where the recitals in a tax deed, pursuant to the statutory form prescribed by law at the time of its issuance, show that the tax sale was illegal, the tax deed so issued is void on its face.

**Trusts — conveyance by beneficiary held not to affect title of trustee, nor inchoate rights of other beneficiaries under it.**

3. Where one of the designated beneficiaries under a trust conveyed all of his right, interest, title, and estate therein to a brother it is *held*, for reasons stated in the opinion, that such conveyance did not in any manner affect the title and estate of the trustee nor the inchoate rights of other beneficiaries pursuant to the trust.

**Trusts — courts at domicil of testator have jurisdiction to remove trustee and appoint a new one; trustee, while acting as such, could not receive valid title to lands involved in trust pursuant to void tax deed.**

4. Where a will has been probated and allowed at the domicil of the testator affecting lands devised in a foreign state, and where such will was also probated and allowed in the state where the lands are situated, and where, pursuant to action taken in both jurisdictions, the title thereto was vested by decree of the probate courts in a trustee upon an express trust, and where, thereafter, through an action in equity at the domicil of the testator, the trustee was removed and a new trustee appointed over all the trusts, including the land in a foreign state, and where. subsequently, in another action, the new trustee secured a determination by a court at the domicil of the testator that he was the owner, individually, of the land by reason of tax deeds, it is *held*, for reasons stated in the opinion as follows:

(a) That the courts at the domicil of the testator had jurisdiction and authority to remove the trustee and appoint a new trustee.

(b) That the new trustee did not receive a valid title to the land in North Dakota which he could receive and accept while acting as trustee pursuant to the void tax deed issued to him.

**Trusts — trustee, while acting as such, cannot secure title personally by adverse possession.**

5. A trustee cannot secure title personally by adverse possession while the duties of a trustee under an express trust are imposed upon him.

Opinion filed April, 3, 1923.

Taxation, 37 Cyc. p. 1437 n. 22; p. 1439 n. 41; Trusts, 39 Cyc. p. 217 n. 59; p. 226 n. 99; p. 227 n. 2; p. 237 n. 65; p. 265 n. 84; p. 298 n. 30; Wills, 40 Cyc. p. 1768 n. 51; p. 1770 n. 55; p. 1775 n. 76.

In District Court, Pembina County, *Burr, J.*

Action to determine adverse claims.

Defendant, Ella C. Strong (Mrs. Robert J. Strong), has appealed from a judgment quieting title in plaintiffs.

Judgment reversed and cause remanded for further proceedings.

*Brickner & Knox,* for appellant.

In a statutory action to determine adverse claims to real property it is incumbent upon the plaintiff to prove a title sufficient to authorize him to maintain the action, and, until he furnished such proof, the defendant is not required to prove his adverse claim, and that where a tax deed is void upon its face it is not sufficient to sustain plaintiff's action. Youker v. Hobart, 115 N. W. 839.

"A life estate in land may be created by a will providing that the devisee may enjoy the income for life."

"A gift of the income of personal property or of the rents and profits of land, perpetual or without limit as to time, carries the personal property absolutely or the lands in fee simple."

"If the enjoyment of the income be restricted to the life of the legatee or devisee, a life estate in the property passes." 30 Enc. Law, 743; Lewis v. Harrower, 197 Ill. 315; Andrews v. Boyd, 5 Me. 199; Butterfield v. Haskins, 33 Me. 392; Stone v. North, 41 Me. 265; Sampson v. Randall, 72 Me. 109; Fuller v. Fuller, 84 Me. 475; Parine v. Forsaith, 86 Me. 357; Wilson v. Curtis, 90 Me. 463; Fogler v. Titcomb, 92 Me. 184; Diament v. Lore, 31 N. J. L. 220.

"The rule is well settled that the possession of land by a tenant for life is not adverse to the remainderman or reversioner." 1 Cyc. 1056 and cases cited.

"Until the death of the life tenant the statute does not begin to run in favor of the life tenant or his grantee against the remainderman whether the estate in remainder be vested or contingent, legal or equitable." Lamar v. Pearre, 82 Ga. 354, 9 S. E. 1043; Augusta v. Radcliffe, 66 Ga. 469.

"Thus a tenant for life cannot debar the rights of a remainderman by a surrender or a release, or by any other voluntary acts for merging the lesser estate into the greater." Moore v. Luce, 29 Pa. 260, 72 Am. Dec. 629.

"The life tenant may not, by failure to pay taxes, acquire a certain

adverse claim founded upon a tax title issued by reason of such default."
Watkins v. Greene, 101 Mich. 493.

A tax deed is void on its face when it shows a sale of land in a manner not authorized by statute. Murphy v. Wilson, 37 N. D. 300, 163 N. W. 820; Youker v. Hobart, 17 N. D. 296, 115 N. W. 839; Cain v. Ehrler, 36 S. D. 127, 153 N. W. 941; State Finance Co. v. Trimble, 16 N. D. 199, 112 N. W. 984; State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357.

"The purpose which underlies this legislation has been pushed further in some states, and under the provisions of the revised statutes of New York, enacted in 1828, and adopted to a greater or less extent in a number of states, not only are passive trusts of realty to be construed as direct conveyances to the beneficiary, but express active trusts in real property are valid as trusts for certain enumerated purposes only. But if the performance of any act lawful under a power is authorized, the trust is effective as a power in trust." 28 Enc. Law, p. 867.

"A trust may be defined as an obligation arising out of a confidence reposed in one who has the legal title to property conveyed to him." 28 Enc. Law, p. 858.

Powers are not estates but rather operate upon estates.

"A general power is one which enables the donee to appoint whomever he pleases."

"A special power is one whereby the donee is restricted to an appointment to, or among, particular objects only." 22 Enc. Law, p. 1092.

*Feetham & Fraine,* for respondent.

It has been held that a quitclaim deed may be merely a release. Wightman v. Spafford, 8 N. W. 680.

And this may be inferred not only from the recitals of the deed but from the adequacy of the price given and other circumstances showing the purpose of the instrument. Taylor v. Harrison, 26 Am. Rep. 304.

Under the circumstances in this case, what better inference can be drawn than that Freeman was obtaining a mere release and engaged in a laudable endeavor to purchase peace in his possession. Kuh v. Flynn, 189 N. W. 280.

### Statement.

BRONSON, Ch. J. This is an action to determine adverse claims

brought against the St. Paul Trust Company, Robt. J. Strong, Mrs. Robt. J. Strong, Maggie Strong, and all other persons unknown claiming an estate or interest. The property concerned is a half section of land in Pembina County, North Dakota. Service was secured against the defendants by publication. The defendants, Robt. J. Strong and his wife, Ella C. Strong, interposed an answer. None of the other defendants appeared. The answering defendants alleged a right, interest, and title in themselves through a devise to defendant Robert J. Strong contained in the will of his father, Charles D. Strong, deceased. This particular devise reads as follows:

"Twelfth. I give, devise, and bequeath unto the St. Paul Trust Company, as trustee, two certain farms and parcels of land situated in Pembina County, Dakota Territory, being the same tracts and farms of land heretofore sold and conveyed to me by my son, Robert J. Strong, and his wife. To have and to hold the same as such trustee, upon the trusts following, viz.: to demise, lease and let the said farms, upon such time and terms as to the said trustee may seem best, to collect the rentals and income therefrom, to pay the taxes and other expenses necessary to the execution of said trust, for and during the natural life of my said son, Robert J. Strong, to pay over the said net rentals and income, either to my said son, or to his wife, or to his children, or to the guardian of such children, as may be best for his family, in the judgment and discretion of the officers of said trustee; and upon and after his death, to sell the said real estate or any part thereof, upon such terms and times as to said trustee shall seem best, and to pay over the net proceeds of such sales either to the widow of my said son, if any, or to his surviving children, or to the lawful guardian of his minor children, as to said trustee shall seem for the best interests of the widow or children of my said son. Provided always, that, if my said son shall choose to reside upon and occupy either of said farms and cultivate the same, he may do so, without rental, and during his lifetime, so long as he shall pay the taxes and other lawful assessments against the same. But my said son shall have no control over the income or rentals of any of said real estate, during his lifetime."

They further alleged that the will was duly admitted to probate in the probate court of Ramsey county, Minnesota; that the nominative trustee, the defendant St. Paul Trust Company, entered upon the exe-

49 N. D.—42.

cution of its trust but defaulted therein; that Freeman P. Strong, the brother of Robert and the father of the plaintiffs, was substituted as trustee to execute the continuing trusts imposed by the will; that the plaintiffs are fully acquainted with the terms and conditions of this trust and the right and title of the answering defendants as cestuis que trust in the land. They request that the court protect and confirm their interests; that Freeman P. Strong be made a party defendant; that plaintiffs be required to make full proof as to the origin and validity of their alleged title and be required to account to the answering defendants for the rentals and income from said property. In a reply, plaintiffs admit the making of the will and its admission to probate, both in Ramsey county, Minnesota, and in Pembina county, North Dakota. Plaintiffs further allege that defendants Robert J. Strong and Maggie Strong, his wife, on February 11th, 1891, made a quitclaim deed of the land to Freeman P. Strong, who later conveyed to plaintiffs. Further, that prior to August 21, 1896, the lands were forfeited to the state for nonpayment of taxes and on that day the state, by two certain tax deeds, conveyed the land to Freeman P. Strong. Further, that in an action in the district court of Ramsey county, Minnesota, in which the St. Paul Trust Company, as trustee, and Robert J. Strong, Maggie Strong, and Freeman P. Strong were named as parties, the same issue involved herein became there directly involved and a final judgment was rendered on May 19th, 1902, whereby Freeman P. Strong was adjudged to be the owner of this land. That Freeman P. Strong, as trustee under the will, did not accept any trusteeship concerning this land; that such Freeman P. Strong made full accounting of his trust and was discharged from all of his duties as trustee with approval by Robert J. Strong and Maggie Strong. That neither of the answering defendants has been seized of the premises within twenty years before the commencement of this action; that plaintiffs have been in the open, adverse, continuous and exclusive possession of the lands through themselves and their immediate grantor ever since January 27th, 1896, and, for a period of more than ten years, have paid all taxes and assessments legally levied thereupon.

On September 23d, 1921, the trial court made findings of fact conforming substantially to the facts alleged in the reply and ordered the

title to be quieted in the plaintiffs free from any right, title, or claim by the defendants.

On March 22nd, 1922, at Washington, District of Columbia, the defendant, Robert J. Strong, died. On April 14th, 1922, the defendant Ella C. Strong appealed from the judgment. She had requested a trial de novo in this court.

The record is voluminous. It is necessary to state the facts somewhat at length. These facts are: The defendants Robert J. Strong and Maggie Strong were married in Philadelphia in October, 1864. Robert secured a divorce from Maggie at St. Louis, Missouri, in January, 1876, but he afterwards lived with her in St. Louis, in Pembina county, North Dakota, and in Washington, District of Columbia. They lived together in North Dakota for some nine years. There Robert homesteaded some land. He acquired the half section of land herein involved. He and Maggie left Pembina county about 1885. Prior to that time he and Maggie deeded this land to Charles D. Strong, a resident of St. Paul and the father of Robert J. Strong.

On August 21st, 1886, Charles D. Strong made the will concerned and on January 5th, 1889, a codicil thereto. On January 7th, 1890, Charles D. Strong died at St. Paul, Minnesota. In December, 1891, Robert secured another divorce from Maggie in the district court of Ramsey county, Minnesota. This was done, pursuant to Robert's testimony, by reason of his father's desire. Later, in Washington, District Columbia, Robert continued to have relations with Maggie until 1902 when they separated. In January, 1903, at Washington, District of Columbia, Robert married the appellant, Ella C. Strong. She was the wife of Robert at the time of his decease. There are no surviving children as the issue of Robert's marriages. Charles D. Strong at the time of his death possessed considerable property. This consisted of notes, stock, real estate in Minnesota, in Pembina county, North Dakota, in Manitoba and in Massachusetts. He left surviving him a widow and several children. Robert was the eldest.

The testator devised to the wife a life estate in his homestead at St. Paul, Minnesota, and certain other property and $5,000. He bequeathed to the St. Paul Trust Company, as trustee, all his stock in the Strong-Hackett Hardware Company, to be held in trust by the trustee for the life of his wife for certain particular uses and trusts. He directed the

trustee to collect dividends on the stock and to pay to his wife $2,500 per year during her life, and, out of the net income from such stock, to otherwise pay a certain income to his children and grandchildren and others, in a certain manner, pursuant to stipulated conditions. He directed his trustee to take an active interest in the affairs of the hardware company. After the death of his wife, he directed the trustee to hold 150 shares of stock, during the lifetime of his sons Robert J., Charles H., and Cyrus D., to collect the income and dividends thereon, and to pay over the net income, in the exercise of its judgment, to them, their wives, or their children as might be most for the benefit of them or their families. This trust continued upon the death of any such son for the benefit of his widow or children. He gave specific directions to the trustee concerning other shares of stock and the disposition of the income thereof. The specific devise of the land involved herein is hereinbefore contained in the 12th subdivision of this will. In the 13th subdivision of the will he devised certain real estate in Pembina city to the St. Paul Trust Company as trustee. During the life of Robert J., Charles H., and Cyrus D., his sons, the trustee was authorized to lease and generally manage the real estate, collect the income and to pay over the net income to such sons during their joint lives, with the provision that if a widow or issue should survive any such son, the trustee should convey to such widow or issue the proper share of the deceased; otherwise, the property should revert to the estate of the deceased. In the 17th subdivision of the will the trustee was directed to pay all taxes, insurance, and necessary expenses for repairs on any and all real estate of which he might be seized at his decease so long as the trust relating to the same continued. Specifically the will gave to the trustee full power and authority to sell any and all property, real and personal; to make, execute, and deliver deeds and writings necessary; and to make new or different investments of the trust property, with the provision that the proceeds of any sales or exchanges made should be held on the same uses and trusts as provided for concerning the original trust property. This was subject to the provision that no sale or exchange of real estate held for his wife or his sons should be made without their written consent or approval. The rest and residue of his estate was devised and bequeathed to his children.

In the codicil it is recited that the testator had disposed of all its

stock in the hardware company, for which he held six promissory notes aggregating $115,000. The testator bequeathed these notes and the title therein to the trust company, subject to the same trusts with reference to the proceeds, investments, and income thereof, as was imposed in the will concerning the shares of stock. The trustee was given full power and authority to collect the principal and interest of such notes and to collect, invest, and reinvest the proceeds thereof for all the purposes of the trusts upon which the stock would have been held by it if the same had not been sold by the testator.

This will was admitted to probate in Ramsey county, Minnesota, on February 10th, 1890. The St. Paul Trust Company, named in the will as executor, was duly appointed by the probate court of Ramsey county as the executor. It accepted the trust and qualified as trustee. On February 28th, 1891, through an interlocutory decree entered in the probate court of Ramsey county, Minnesota, certain trusts designated in the will were vested in the St. Paul Trust Company as trustee. In particular, the land involved herein was assigned and awarded to the trust company, as trustee, upon and for the particular uses, purposes, and trusts which are created and specified in the 12th subdivision of the will; likewise, the Pembina city property, mentioned in the 13th subdivision of the will, was assigned and awarded to the trust company.

On February 27th, 1892, authenticated copies of this last will and codicil were proved, allowed, and admitted to probate in the county court of Pembina county, North Dakota. In this county court, W. J. Kneeshaw was appointed administrator of the estate of Charles D. Strong with the will annexed.

On February 13th, 1893, a final decree was entered in this county court of Pembina county. It recited payment of all expenses of the estate and of administration; the payment of all debts existing against the deceased; that the estate had been fully administered. It recited the residue of the estate existing, namely, the Pembina city property and the lands involved herein. It vested title thereto in the St. Paul Trust Company, as trustee and in trust, according to the terms, conditions, and trust named in the last will of Charles D. Strong, deceased, concerning which the St. Paul Trust Company had qualified as foreign executor and trustee in the administration and probate of such will in the probate court of Ramsey county.

From the record, it appears that the taxes upon this land levied for 1891, viz.: Upon one quarter, $28.05, upon another, $33.55, were not paid. Accordingly, on December 6th, 1892, the county sold such land for taxes to one C. W. Moore. Freeman P. Strong, son of the deceased and the brother of Robert, purchased these certificates. Thereafter, pursuant to proceedings had, on January 27th, 1896, a county treasurer's tax deed, upon each of the quarter-sections, was made to Freeman P. Strong. He testified that after he received these deeds he took possession of the property and has had possession of it ever since until he deeded it to his children, the plaintiffs. The deed to his children was made in February, 1919. Ever since the time of these tax deeds the taxes on this land have been paid by him or the plaintiffs. They have received the rentals during all such years. He employed an agent to look after the land. He considered it his property. He signed leases for this land. He never exercised any control over it or right of possession in the character of a trustee. The defendant, Robert J. Strong, never took possession of the land at any time after the death of his father.

From the record it appears that the St. Paul Trust Company, as trustee, did collect some rentals or income from the Pembina city property and these lands involved herein. In May, 1896, it collected $27 from its agent Kneeshaw for a grass privilege upon these lands.

From the four corners of the record it does appear that the St. Paul Trust Company, as trustee, proceeded to collect the assets of the estate and thereafter, to invest the same in St. Paul real estate. Apparently these investments were made at a time when real estate in St. Paul was buoyant, for tremendous losses afterwards occurred when deflation in the realty values there came. The record is not complete concerning all of these transactions but it appears that, in April, 1900, the St. Paul Trust Company instituted an action in equity against the beneficiaries of the trusts named in the will of Charles D. Strong. The complaint therein alleges that the trustee accepted several trusts named in the interlocutory decree of February, 1891; entered upon the discharge thereof and ever since has been acting as such trustee; that in the execution of the trust it has collected moneys, made divers expenditures, and invested and reinvested trust funds; that an accounting is rendered, but the same does not cover nor include receipts or account of the trusts

named in the 12th and 13th subdivisions of the will.  It requests that
a court adjudicate and determine its account and the balance of money
in its hands pertaining to the trusts, and that the defendants be required
to establish their interests and estates to the money and to the realty
and other property subject to the trusts.  Thereupon, as the record dis-
closes, a concert of action was attempted by the beneficiaries to contest
the trustee's account, to charge it with mismanagement of the estate,
and to cause its removal as trustee.  Freeman wrote to Robert about
this mismanagement.  An attorney likewise wrote to him.  By reason
of authority that Robert gave to Freeman, and otherwise, attorneys were
secured who appeared for Robert Freeman and other beneficiaries.  The
account and administration of the trustee was accordingly contested.
Trial was had in the district court of Ramsey county, Minnesota.; find-
ings were made that the trustee's account should be surcharged with the
amount of certain investments aggregating $78,200 and with profits
accruing therefrom amounting to $27,745; that the title to the real
estate and securities representing such investments was in the trust
company individually.  The trustee appealed from the decision.  There-
after, in December, 1901, the supreme court of Minnesota affirmed, with
certain modifications, the decision of the trial court.  See St. Paul Trust
Co. v. Strong, 85 Minn. 1, 88 N. W. 256.  The St. Paul Trust Com-
pany resigned as trustee.  In this same action thus appealed to the
supreme court, the district court, on January 7th, 1902, made an order
which recited that Freeman P. Strong had been appointed by the court
trustee of all the trusts created under the will of Charles D. Strong,
deceased, and, having qualified as such trustee by the execution of a
bond in conformity with the order of the court and the same having
been duly approved by the court, he was duly authorized to act as such
trustee in the place and stead of the St. Paul Trust Company.  As a
result of this decision the St. Paul Trust Company became in an in-
solvent condition.  Meetings of creditors were had and a committee
appointed to take charge of its affairs through voluntary agreement.
Freeman P. Strong was a member of this committee.  He took and
established his offices in connection with this committee work in the
offices of the St. Paul Trust Company.  The old officers resigned and
new ones took their place.  On March 3d, 1902, in a letter Freeman
wrote Robert at Washington, District of Columbia, he stated that the

trust company had resigned as trustee and that the court had appointed him trustee in its place; that the creditors had insisted that the officers of the trust company should resign and that the committee of creditors should manage its affairs; that it should go into voluntary liquidation; that this was done; that the committee was composed of himself and three other parties, naming them; that he, Freeman, had a desk at the trust company's offices and went there daily; that the assets of the company were all in real estate in St. Paul and were the worst possible lot of assets imaginable, the debts amounting to about $320,000; that the course they were pursuing was quicker than to throw the trust company into the hands of a receiver; that, while it was a fact that he was now the trustee of the general fund, it was necessary for the trust company, before they could turn over the special trusts, to do it through the court for his protection in the future; that it must show what came into its possession in the special trusts as well as the general fund and what they have done with the same.

Prior to this time, in February, 1901, Robert J. and Maggie executed a transfer of all of their interests in the estate of Charles D. Strong to Freeman P. Strong for a recited consideration of $1,000 and other valuable considerations; also, they made a quitclaim deed to Freeman P. Strong of the land involved herein. Freeman P. Strong testified that he paid $100 in cash and gave a note for $900 which afterwards matured and was paid by him; that he took up and paid a note for Robert amounting to $224; that he advised his brother when he was in Washington, at the time he got these deeds or transfers, about his tax title. Robert J. testified, on the contrary, that he did not receive any consideration for this deed; that he represented to him when he visited him in February, 1901, that he had a tax title on these two farms; that he was the absolute owner of the property and had been recognized in court as such; that in order to handle this property as a separate matter from the St. Paul Trust Company, as trustee, he wanted from Robert a quitclaim deed; that he signed a deed, absolutely in blank excepting that the names were signed and the jurat added; that Freeman agreed to send him a written agreement to show that he would hold this property and protect his interests during his lifetime. He further testified that in June, 1900, Freeman P. Strong told him in Washington that he expected to be trustee; that he, Robert, acquiesced in his being trus-

tee; that he had full confidence in his brother; that he wrote to other heirs recommending it; that he assigned this residuary interest in the estate upon suggestion of his brother who offered him $1,000. He subsequently learned that it brought $6,000; that he signed these papers under protest, calling attention of the attorney to the fact that he never agreed to sell Freeman other than the residuary interest in the estate and that he expected him to send him other papers showing the true transaction. That he did these things having absolute confidence in his brother, but Freeman never sent the promised papers. The witness Robert further testified that he was a drinking man and that seems to have been the trouble with him for many years; for at one time he was confined in a hospital and treated for alcoholism.

In January, 1902, the St. Paul Trust Company instituted an action against Robert J., Maggie, and Freeman P. Strong. The complaint concerns the 12th subdivision of the will. It alleges the trusts created thereunder, the acceptance thereof by the trustee and its entering upon the discharge of its duties as trustee. It further alleges that title vested in such trustee concerning the land involved herein, pursuant to an interlocutory decree in the probate court of Ramsey county made in February, 1891, and pursuant to a decree in the county court of Pembina county in February, 1893. That in May, 1896, the trustee through one Kneeshaw, its agent, collected grass privilege rentals for the use of the real estate in the sum of $27; that the trustee by reason of want of funds had no money to pay the taxes levied and assessed upon such real estate for the years 1891, 1892, 1893, and 1894; that Freeman P. Strong claims to have become an owner of such real estate by virtue of tax sales and has ever since been in possession thereof; that when the trust became vested in the trustee under the interlocutory decree, the trustee requested Robert J. to take possession and occupy the land as he was authorized to do under the will, but he has always refused so to do; that it advised Robert of the unpaid taxes upon the land and of the sales thereof and of the time within which the same could be redeemed and demanded that he should pay and redeem the same or furnish the trustee with money necessary so to do; that Robert neglected so to do. The complaint demanded that Freeman be required to disclose his right, title, and interest in the property and that such title be adjudged and determined by the court; that the plaintiff be

allowed a reasonable allowance for its services and that it be permitted to resign its trust after adjustment of its account for services and the appointment and qualification of its successor. The summons in this action was served by publication against the defendants Robert J. and Maggie in the month of February, 1902.

The record discloses correspondence between Robert and Freeman and between Robert and an attorney concerning this action and concerning the estate. In March, 1902, this attorney wrote Robert that there were two suits by the trust company brought concerning the North Dakota property; that he was acting as Freeman's attorney and that Freeman had become the owner of the farms; that it would not be possible for him to represent Robert in such action but as to the other action, concerning the city property, he did not see any antagonism between Freeman's interest and Robert's interest and he could appear for him. This attorney also wrote Robert that Freeman had called, had seen this letter and approved of it. Then Freeman, a few days later, (March 4th, 1902) wrote Robert to the effect that, as to the farm lands, he did not see that Robert could do anything because it would cost him more than he would get out of it; that the title to the land was in him through his tax deed and the deed from Robert and Maggie, but that if he wanted to spend any money on an attorney he would get an attorney for him. In this action Freeman interposed an answer. It alleged that the trust company accepted the trust mentioned in the complaint and entered upon its duties as trustee; that it continued to so act until January 4th, 1902, when, in an action pending between plaintiff and the devisees, plaintiff tendered its resignation as trustee which included the trust relative to the subject-matter of this suit, and that on January 6th, 1902, the district court accepted such resignation and appointed defendant trustee of such trusts; that on January 7th, 1902, this defendant qualified and became and has ever since been the trustee of all existing trusts created under and by virtue of the last will of Charles D. Strong. He admits that the taxes became delinquent upon the property for the years 1891, 1892, 1893, and 1894, and he alleges that he personally became the owner of the property by virtue of tax sales and ever since has been and is now the owner, personally; that he became such owner prior to January 1st, 1900. He further alleges that under date of February 11th, 1901, Robert J. and Maggie executed

to him a conveyance of the property. He demanded judgment that he be decreed the owner, personally, of the property.

After hearing in April, 1902, the district court of Ramsey county, Minnesota, found that the trust company accepted the trust concerning the land involved in 1891 and entered upon the discharge of its duties; that by final decree in the county court of Pembina county, North Dakota, the real estate was awarded to the trust company as trustee; that the trustee received no income from this property excepting $27 collected for grass rentals through its agent, on May 19th, 1896; that Freeman P. Strong became owner by virtue of taxes paid and has since been in possession; that the trustee requested Robert to take possession of the land but he refused so to do; that also the trustee advised Robert during the years 1891 to 1895 to pay the taxes but he refused to pay such taxes or to advance any moneys that, in the action of the plaintiff against Abigail Spur and other devisees, the plaintiff trust company tendered its resignation as trustee including the trust relative to the subject-matter of this suit under the 12th subdivision of the will; that on January 6th, 1902, the court accepted the resignation and appointed Freeman P. Strong as trustee in place of the trust company; that on January 7th, 1902, Freeman P. Strong qualified, and since such time has become and now is trustee of all the existing trusts including the trust involved in such action. The court ordered that the plaintiff was entitled to judgment, releasing it, as trustee, from further liability and as trustee under the 12th subdivision of the will, and that Freeman P. Strong was the owner of the land described in the complaint. Pursuant thereto judgment was entered on May 29th, 1902. In such action Robert and Maggie did not appear.

From the record it also appears that another action was brought by Ellen A. Strong as administratrix of the estate of Charles H. Strong and personally, against Freeman P. Strong individually and as trustee, against Robert J. and Maggie, and others, all in the district court of Ramsey county, Minnesota, in the year 1905. In that action the resignation of the St. Paul Trust Company as trustee and the appointment of Freeman P. Strong as trustee in its place on January 7th, 1902, is alleged. It alleges that Freeman has administered various trusts. These certain trusts concern the devise of shares of stock, afterwards converted into cash, aggregating about $17,500. It alleges that Freeman, as

trustee, is ready to submit a report. That he is desirous of resigning as trustee and that it is desirable that his resignation be accepted and that the court appoint the Northwestern Trust Company as trustee to succeed him. It further alleges that Freeman is the trustee of property in Pembina county, North Dakota, under the 13th subdivision of the will (the city property); that the plaintiff, as widow of Charles II. Strong, and the son Charles S. are entitled to a conveyance of one third of such property; that Freeman is ready to file his report as trustee thereof. The complaint requests that the account of Freeman as trustee of such Pembina property be examined by the court and allowed and that the trustee convey to plaintiff and Charles S. Strong a one-third interest in the Pembina property and that the Northwestern Trust Company be appointed trustee of the remaining two-thirds interest therein. To this complaint Freeman answered individually and as trustee. He admitted that he was the duly appointed and qualified trustee under the will of Charles D. Strong, as successor to the St. Paul Trust Company as trustee. He alleges that prior to the time he became trustee he purchased from Robert J. and Cyrus the interest and income due them from certain funds. He submitted in his report an account as trustee and requested that the same be allowed and approved. He resigned his trust covering the Pembina property under the 13th subdivision of the will and requested an order of the court directing conveyance to the plaintiff and Charles S. for one third and that the Northwestern Trust Company be appointed as trustee for the property described in the 13th subdivision of the will. He requested that he be continued as trustee of the Robert J. and Cyrus D. trusts aforesaid. In the account attached to his answer it appears that, concerning the Pembina trust, Freeman, as trustee for Charles II., Robert J., and Cyrus D. Strong, received from the trust company, on August 1st, 1902 $176.19 and in 1902, 1903, and 1904, certain rent for the Pembina city property.

The record does not disclose what action was taken by the court in this case.

The record further discloses still another action pending in the district court of Ramsey county, Minnesota, wherein Charles S., Ellen A., and Freeman P. Strong are plaintiffs and Robert J., Maggie, Cyrus D., and Mary J. Strong are defendants. The record shows only an order

made by the district judge, on February 23d, 1910. This order shows an appearance for the plaintiffs and an appearance by an attorney for the defendants and a stipulation made by the parties. The court determined that under the 13th subdivision of the will Freeman, as trustee, was chargeable with $341, moneys derived from the Pembina trust, and recites items of its account; that Charles H. died in 1899; that the trust, under the 13th subdivision of the will, thereupon lapsed; that Robert J. and Cyrus D. and the widow and issue of Charles H. Strong became entitled to a division of the property then remaining in said trust under subdivision 13; that some of such property remains undisposed, vacant, unoccupied, and encumbered with tax liens and is practically of no value; that it would be a waste of trust funds to further pay taxes thereon; that it is to the interest of the beneficiaries that the remaining real property be abandoned and the trust closed; that no other matters alleged in the complaint are admitted or at issue in the proceeding and as such the proceeding is dismissed. It was further ordered that the account of Freeman as trustee be allowed; that one third of the balance be paid to Robert J., amounting to $113.67, or to his attorney, and a like sum to Cyrus D. and to Ellen A. and Charles S.; that on filing receipts for such sums, Freeman should be discharged from the trust under subdivision 13 of the will.

## Decision.

*The Title under the Trust.* Concerning the farm lands involved, the will of Charles D. Strong, in the 12th subdivision, created an express trust. Comp. Laws, 1913, §§ 5364, 5367. It did not create a use which the statute of uses, as codified, would execute. Comp. Laws, 1913, §§ 5360, 5363; 26 R. C. L. 1176; 3 Pom. Eq. Jur. 3d ed. § 984; Smith v. Security Loan & T. Co. 8 N. D. 451, 454, 79 N. W. 981; Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 315, 83 N. W. 245. It devised the title in fee to the St. Paul Trust Company, to hold and administer as an active trustee. As such, the duty was imposed to collect the rentals and income, to pay the taxes and other necessary expenses, and to pay over the net rentals and income to one or more persons in its judgment and discretion. It possessed the power of sale after the death of Robert and the duty thereupon to pay over the net

proceeds of such sales to one or more persons as shall seem for the best interests of the widow or children of the son Robert. Otherwise, this trust was subject only to a right of occupancy by the son without rental, conditional upon his choice so to do and the payment of taxes and assessments by him. Expressly, the son was denied any right of control over the income or rentals of such real estate.

Thus, it may be seen that no estate was devised to Robert, to his prospective widow or children, either in præsenti or in futuro. The cestui que trusts, the beneficiaries, were ascertainable pursuant to and subject to the exercise of a power and a duty imposed upon the trustee, akin to a power of appointment coupled with the trust imposed. Perry, Trusts, 6th ed. § 251. The object of the trust, the benefits to be derived by a class of proposed beneficiaries, did not create any equitable estate in the land for any person or class of the proposed beneficiaries but simply the right, subject to the discretion of the trustee, to receive out of the corpus of moneys received from income, rentals, or sale, an allotment thereof. This was a mere right, not an estate for the class of beneficiaries. Comp. Laws, 1913, § 5373; 39 Cyc. 43, 76; Pom. Eq. Jur. 3d ed. § 991; 26 R. C. L. 1176, 1258, 1262; De Haven v. Sherman, 131 Ill. 115, 6 L.R.A. 745, 22 N. E. 711; note in 37 L.R.A. (N.S.) 400; Perry, Trusts 6th ed. § 307.

This devise of title to such lands, was confirmed in the probate court of Ramsey county, Minnesota, by the probate and allowance of the will and by the interlocutory decree of such court in February, 1892, appointing the St. Paul Trust Company as trustee, and vesting the title of the lands in such trustee, subject to and upon the trusts imposed. Such probate court had jurisdiction so to do concerning the trust involved by reason of its jurisdiction over the will and the parties. Perry, Trust, 6th ed. § 71; 26 R. C. L. 1359. It was further confirmed by the final decree rendered in the county court of Pembina county, North Dakota, specifically vesting title in the St. Paul Trust Company, as trustee, subject to the trust imposed under the conditions of the will. See Penfield v. Tower, 1 N. D. 216, 46 N. W. 413. The St. Paul Trust Company accepted and qualified for the trust imposed. It entered upon the performance of its duties as trustee. It became vested with the title to the lands as an active trustee for the purposes of that trust.

*The Tax Deeds.* Each of the tax deeds were issued to Freeman P. Strong on January 27th, 1896. Each conformed to the statutory form, then prescribed by law, § 1268, Rev. Codes, 1895; each contained a recital of the amount for which the tract of land delinquent was sold and the recital—*"and which was the least quantity of the tract above described that would sell for the amount due thereon for taxes, costs, and charges as above specified."*

But the tax sale occurred on December 6th, 1892. At that time, the then existing law (Laws 1890, § 70, chap. 132) provided:

"The auditor shall sell by public vendue each piece or parcel of land separately in the order in which they are described in the delinquent list returned and by the description therein; but if the sum bid for any piece or parcel shall not be paid before the sale closes, he shall again offer such piece or parcel for sale; he shall state the amount for which each piece or parcel is to be sold, and shall then offer the same in fee to the highest bidder, who shall bid not less than the amount for which the same is to be sold. If no bidder shall bid an amount equal to that for which the piece or parcel is to be sold, then he shall bid in the same for the state at such an amount."

At this tax sale, one C. W. Moore was the purchaser of the lands. In 1891 this law of 1890 was supplemented by providing for a statutory form of tax deed in conformity therewith. Laws 1891, § 7, chap. 100. This law of 1890 repealed the prior existing law which provided for a method of sale conforming to the recitals in the tax deeds involved. Terr. Code 1887, § 1622. The Code of 1895 restored the law of 1887 and repealed this law of 1890. Rev. Codes, 1895, § 1257.

Accordingly, it is apparent from the recitals in the tax deeds that the auditor did not follow the method of sale required by the then existing law. Hence, the tax deeds show on their face that they are void. Youker v. Hobart, 17 N. D. 296, 115 N. W. 839; Murphy v. Wilson, 37 N. D. 300, 163 N. W. 820, Ann. Cas. 1918E, 1101. These recitals in the tax deeds, though following the statutory form prescribed at the time of their issuance, show an illegal tax sale and, hence, the tax deeds, issued thereupon, to be void. Reckett v. Knight, 16 S. D. 395, 92 N. W. 1077; King v. Lane, 21 S. D. 101, 110 N. W. 37. Such tax deeds, void on their face, did not operate to set in motion the statute of limitations: Rev. Codes, 1895, § 1269. Hegar v. De Groat, 3 N. D.

354, 364, 56 N. W. 150; Eaton v. Bennett, 10 N. D. 346, 350, 87 N. W. 188. See Groesbeck v. Seeley, 13 Mich. 343; note in 8 L.R.A. (N.S.) 356.

*The Deed and the Transfer from Robert to Freeman.* The quitclaim deed and the transfer made by Robert and Maggie to Freeman on February 11th, 1901, conveyed, if anything, only such rights, interests, title, or estate as Robert possessed. Certainly, so far as these lands are concerned, they did not convey nor transfer the title and estate of the trust company, nor any inchoate rights of Robert's prospective widow or children, pursuant to the will and trust.

Concerning these lands, the only surviving beneficiary of the trust imposed thereon is the appellant, the widow of Robert. Her rights are measured by the terms of the trust pursuant to the will, not by her rights in the estate of her deceased husband.

It is wholly unnecessary to determine the validity of this deed and transfer as affecting these lands. See § 5377, Comp. Laws 1913. It is evident that whatever rights Robert possessed, whether termed a right, a title, or an estate, in any event, expired with his death. Such rights, whatever they were or are, could not and did not affect the title of the trustee or the rights of the appellant, the widow of Robert.

*The Minnesota Cases and Decisions.* The probate court of Ramsey county, Minnesota, had jurisdiction to allow and probate the will of Charles D. Strong, a resident of St. Paul at the time of his decease. 40 Cyc. 1245. Most of the property of the deceased was situated in Minnesota. Some property was situated in other states and some in a foreign country.

This probate court, pursuant to the probate of the will and the interlocutory decree made in 1891, had jurisdiction to appoint the St. Paul Trust Company, as executor, and to designate it as trustee pursuant to the terms of the will. At least its jurisdiction comprehended the right to appoint the executor, to supervise such executor during the course of administration, and to ascertain the devisees. Farnham v. Thompson, 34 Minn. 330, 336, 57 Am. Rep. 59, 26 N. W. 9; State ex rel. Martin v. Ueland, 30 Minn. 277, 282, 15 N. W. 245; Bengtsson v. Johnson, 75 Minn. 321, 324, 326, 78 N. W. 3. See 23 C. J. 1010; Pom. Eq. Jur. 4th ed. §§ 156, 348, p. 2147. The county court of Pembina county likewise had jurisdiction to allow and probate the will and

determine the devisee of the lands. Terr. Code 1887, §§ 5677, 5678, 5679. Such was in the nature of an ancillary administration. 24 C. J. 1111. The St. Paul Trust Company accepted the trust and entered upon the discharge of its duties as trustee for all of the trusts involved in the will. The administrator, with the will annexed, for a time in North Dakota, exercised his duties for purposes of administration. It is sufficient to state, that, pursuant to these probate proceedings, a title in these lands involved was vested in the trust company, as an active trustee upon an express trust. As trustee this trust company did exercise some of its duties concerning these lands. It collected from its agent, Kneeshaw, rentals therefrom in 1896. In 1900 the St. Paul Trust Company, as trustee, instituted its action in equity in the district court of Minnesota for a determination concerning its trusteeship, an accounting thereof, and the rights and interests of the defendants. The devisees in the will were made parties. So far as this record discloses the district court of Minnesota secured and had jurisdiction over the trustee Freeman P. Strong, Robert Strong, and the other devisees. It may be noted that although the complaint by the trust company alleges that the accounting rendered does not cover or include receipts or disbursements covering the specific trusts created by the 12th and 13th sections of the will relating to real estate in Pembina county, North Dakota, nevertheless, the will and codicil are made a part of the complaint as well as the interlocutory decree made by the probate court of Ramsey county; likewise, there is attached to the complaint a statement of all real estate and personal property belonging to the trust estate which includes the land involved herein. Also, the complaint demands that the defendants be required to establish and prove their interests and estates in the real estate and other property remaining subject to the trust. The record does not disclose what answer was interposed by the devisees. It does appear, however, that the district court and the supreme court, pursuant to the issues presented and considered, made a determination concerning the trusteeship of the trust company; that, pursuant to this determination the trust company resigned as trustee of all the trusts and that the court, in January, 1902, appointed in its place Freeman P. Strong as trustee thereof.

Accordingly, it sufficiently appears, from the record, that the courts of Minnesota had jurisdiction over the parties, including the trustee,

49 N. D.—43.

Freeman P. Strong, and the devisees. The Minnesota courts had authority so to do even though the trusteeship concerned lands situated in another state. See Perry, Trusts, 6th ed. §§ 71, 72; notes in 69 L.R.A. 673, and in 23 L.R.A. (N.S.) 924. In 1902, after the resignation of the trust company as trustee, and after the appointment of Freeman P. Strong as trustee, the action, hereinbefore mentioned, was instituted by the trust company against Robert and Maggie and Freeman P. Strong. This action was brought to secure a determination involving the trusteeship of the trust company concerning these lands. Neither Robert nor Maggie appeared in the action and no jurisdiction was secured over them through the publication of the summons. Freeman P. Strong appeared, asserted title in himself, individually, and demanded a confirmation of that title. In his answer Freeman alleged that the trust company accepted the trust mentioned in the complaint and continued to act as trustee until January 4th, 1902, when plaintiff tendered its resignation as trustee concerning the trusts that included the subject-matter of the suit and that on January 6th, 1902, the district court accepted such resignation and appointed Freeman as trustee of such trusts. In this action the court found that the trust company was not a trustee and had resigned as trustee; nevertheless, it proceeded to adjudicate and determine that the title to this land in North Dakota was in Freeman P. Strong. The respondents admit that the only effect of the decision of the Minnesota court would be to settle some question possibly an issue between persons and upon property within its jurisdiction. It is apparent that at the time this action was instituted, heard, and determined Freeman P. Strong was a trustee possessing the title as such to these lands in North Dakota. It is admitted by the court proceedings in that regard in Minnesota. It is admitted by the answer of Freeman P. Strong himself. The trust company then had no active duties as trustee and could secure no other determination by the court than a discharge of its obligations and duties as a trustee. It is further evident that the judgment in that action did not create a title in Freeman P. Strong, personally, that he did not then possess and, further, that under plain principles of estoppel he could not receive and accept a title personally which he then had and possessed as trustee. See Pom. Eq. Jur. 4th ed. §§ 1062, 1067, 1075; Turner v. Fryberger, 94 Minn.

433, 110 Am. St. Rep. 375, 103 N. W. 217; King v. Remington, 36 Minn. 15, 29 N. W. 352.

It also appears that about the same time another action was instituted or contemplated in the district court of Minnesota concerning the administration of the trust as it affected the Pembina city property. What happened with reference to this contemplated action, the record does not disclose; but it further appears that in 1905 another action was instituted in the district court of Minnesota that concerned the trusteeship of Freeman P. Strong and his administration thereof. Under the specific allegations made in that action it concerned administration of the trust involving the real estate in Pembina city, North Dakota. In that action Freeman P. Strong, as trustee and individually, admitted that he was the duly appointed and qualified trustee of his father's estate, so appointed by the court. He submitted a report as trustee, requested its allowance and the acceptance of his resignation as trustee of the Pembina city property. In his account attached, it appears that he collected moneys as trustee concerning this Pembina city property, from 1902 to 1904. What finally happened in this action, the record does not disclose; otherwise, the record does disclose, however, an order made in an action wherein Charles S., Ellen A., and Freeman P. Strong were plaintiffs and Robert, Maggie, Cyrus D., and Mary J. Strong were defendants, which allows the account of Freeman as trustee and directs that, upon the payment of certain amounts pursuant to the trust, Freeman be discharged from the trust under the 13th subdivision of the will which affects the Pembina city property.

From all of these considerations, it follows that Freeman P. Strong, in January, 1902, became a trustee for the trusts created in the will; that he qualified for, and assumed the duties of, such trustee; that at that time he did not have any title to the Pembina county lands; that the judgment of the district court of Minnesota, rendered in 1902, did not create any title in him concerning such Pembina county land; that as such trustee it was his duty to continue the trust and carry it into force and effect pursuant to the terms of the will.

*The Statutes of Limitations concerning Adverse Possession.* Pursuant to the considerations hereinbefore applied the statutory periods concerning adverse possession have never operated so as to devest the trustee of the title possessed in these lands pursuant to the terms of the

will. Between 1896 and 1902 the time was insufficient. Since 1902 Freeman P. Strong has been the trustee of these lands. While trustee, pursuant to his duties and obligations as such, he could not secure a title by adverse possession, in himself, individually, as against himself as trustee. Nowhere in the record does it appear that Freeman P. Strong was ever released from his obligations and duties as trustee concerning these lands herein involved. Freeman P. Strong, it is true, did testify that he never exercised any duties as trustee but this testimony cannot negative nor override his specific obligations and duties, imposed upon him by acceptance of the duties of a trustee pursuant to an appointment for all of the trusts concerned under this will and his admissions made in this record in that regard.

### Conclusion.

Accordingly, it follows that an active express trust was created concerning these lands; that the title pursuant thereto was vested in the trustee; first, in the St. Paul Trust Company and, then later, in Freeman P. Strong as trustee; that Freeman P. Strong never acquired any title individually through the tax deeds or the deed from his brother Robert; that, otherwise, he has not acquired title through statutes of limitations; that his children, through the deed of Freeman to them, stand in the same position concerning this title as their father. It further follows that the estate of Robert J. has no title in these lands; that the right and interest of the appellant exists, not by virtue of her rights to the estate of Robert J., her husband, but by virtue of the express trust created in the will of Charles D. Strong and the action that may be taken by the trustee thereof. Accordingly, the title to the Pembina county lands is still vested in the trustee; in Freeman P. Strong as trustee, the successor of the St. Paul Trust Company, and in the plaintiffs as equitable trustees subject to the jurisdiction of a competent court, all for the purposes of the trust as created in the will. 39 Cyc. 373.

The trial court erred in determining the plaintiffs to be the owner of these lands. The judgment must be reversed and the cause remanded for the purpose of further proceedings, to the end that the court may enforce this express trust pursuant to the terms of the will and may

appoint and designate a trustee, enforce an accounting, or otherwise compel the present trustees to act consonant with the terms of the trust. The judgment is accordingly reversed and remanded for further proceedings consonant with this opinion. The appellant will recover costs.

JOHNSON, CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.